UNITED STATES of America

v.

Garnell S. ROBINSON, Appellant.

No. 75–1535.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 21, 1975.

Decided Feb. 20, 1976.

Appeal from the United States District Court for the District of Columbia (D.C. Criminal No. 75–28).

Harry A. Huge, Washington, D.C. (appointed by this Court), with whom Kenneth V. Handal, Washington, D.C., was on the brief for appellant.

Peter E. George, Asst. U. S. Atty., Washington, D.C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Carolyn R. Kleiman, Asst. U. S. Attys., Washington, D.C., were on the brief for appellee.

Before DANAHER, Senior Circuit Judge, LEVENTHAL, Circuit Judge, and VAN PELT,* United States Senior District Judge for the District of Nebraska.

LEVENTHAL, Circuit Judge:

This is an appeal from a conviction, under 21 U.S.C. § 841(a), for sale of narcotics to an undercover police officer on two occasions, on November 2 and November 8, 1974. The court suspended imposition of sentence and put the defendant, appellant in this court, on three years' probation with three-year special parole treatment.

## I.

■ The first issue arises from appellant's motion to disclose the identity of a reported informant. This was considered by the court prior to trial, after it heard testimony of the detective on appellant's motion to suppress statements made to police. The prosecutor offered to have the undercover officer testify that on the two occasions embraced in the indictment no other person besides the officer and the defendant was present. The court stated that in the absence of any showing that informant was present, whether by testimony of defendant or by cross-examination of the officer, there was no basis for producing the informant. Defense counsel declined either to put defendant on the stand or cross-examine the officer. In this state of the record, we agree that there was no showing of need that required the trial court to order the government to produce the informant.

## II.

A more substantial question is raised by the government's introduction in its direct case, over the objection of defense counsel, of testimony by the police offi-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

cer as to an incident alleged to have taken place on November 19th, subsequent to the dates of the transactions charged in the indictment. Officer Walker testified that on that date, as he was leaving a pool hall, defendant approached him and said (Tr. 69): "Somebody told me you were a roller.[1] Let me tell you for your own good, take it any way you want to take it, don't come up here any more." Defense counsel objected on the grounds that this was prejudicial and irrelevant. The trial court overruled the objection stating (Tr. 68): "I am sure it is prejudicial, but I think the relevance of it is prejudice." Presumably this was a misstatement, either by the judge or the reporter, and in all likelihood the judge intended "I think the prejudice arises from its relevance."

There was prejudice here, because the import of the statement was to suggest that defendant not only was engaged in selling narcotics but was quite prepared to use violence with respect to policemen. The government claims that the prejudice was outweighed by its materiality. While the avowed purpose of this testimony was to explain why investigation of defendant had terminated,[2] its materiality is now said to lie in corroborating the identification of defendant by Officer Walker. Although Officer Walker's own testimony was to the effect that he had seen defendant seven times prior to November 19, government counsel argues that since identification was the central issue, given the defendant's

denial of involvement in the two transactions in the indictment, the intensity of the November 19th encounter corroborates the contested identification, as it can be inferred that Walker would pay close attention to a person who had made this kind of threat. There is at least an edge of relevance on the issue of identification. The government also argues that Walker's testimony was probative of defendant's consciousness of guilt, showing that the sales by the defendant had been made knowingly and intentionally.

■ While we have some difficulty with the trial judge's failure to engage in a reflective weighing of the prejudice against the materiality, it is our view that the admission of Walker's testimony[3] fell within the range of discretion of the trial judge. We particularly take into consideration that while Walker's testimony that defendant told him "don't come up here any more" was prejudicial, the purported threat was relatively indefinite, in total effect almost tepid, so that we do not have the impact of a severe distortion. There are limits to the extent to which inflammatory material can come in to corroborate identification, and we might indeed find prejudicial error if, say, testimony that defendant had been seen battering a six-year-old child were admitted on an identification rationale. Here, the testimony was not of a nature as to raise serious danger that "defendant might be con-

---

1. Officer Walker identified that a "roller" is a policeman.

2. No objection was specifically raised to the government's bringing to the attention of the jury that the investigation had been terminated. Defense counsel's objection was to Officer Walker's recounting the content of the threatening statement attributed to defendant.

3. We are aware that once Walker's testimony came in, defendant followed the tactic of cross-examining Walker on his recollection of the alleged encounter of November 19, and that the government then offered testimony in corroboration of Walker's account to the effect that he related this encounter to Detective Johnson by telephone shortly afterward. Defense counsel objects that Johnson's testimony embellished Officer Walker's account. Johnson's slight enlargement to the effect that de-

fendant was reported to have threatened that "something was going to happen" to Walker (Tr. 124) did not exceed the permissible bounds of corroborative testimony.

Appellant's brief further argues that Johnson's testimony was inadmissible as hearsay. This particular contention, however, was not raised at trial, defense counsel merely reiterating the objection previously raised to Walker's account of the November 19th incident (Tr. 124). In any case, Johnson's testimony was not offered as substantive evidence to prove that defendant had indeed made the threat, but rather as corroboration after impeachment by cross-examination that Walker had reported the threat to Johnson and this was the reason for terminating the investigation. See 4 Wigmore, Evidence § 1132, at 294 (Chadbourn Rev. 1972).

victed of being a 'bad man' in the eyes of the jury rather than of the crime for which he is on trial." *United States v. Fox,* 154 U.S.App.D.C. 1, 5, 473 F.2d 131, 135 (1972).

### III.

Finally, error is claimed in the admission of Officer Walker's rebuttal testimony. Defendant, on direct, characterized his relationship with his alibi witness, Ruben Luke, as a friendship involving occasional borrowing and lending of money between paydays, and denied any recollection of having had a conversation with Officer Walker. Luke, on direct, similarly portrayed himself as a close friend of defendant who occasionally lent money to him and borrowed money from him, and denied knowing Walker or having seen him at the scene of the transactions charged in the indictment. On cross-examination, Luke denied having any business relationship with defendant and categorically denied ever having a conversation with Walker or ever having sold narcotics to him or anyone. In rebuttal, Walker testified to Luke's having driven defendant to the scene of the November 2nd transaction; to statements made to Walker by defendant to the effect that Luke was a joint venturer with defendant in the buying and selling of drugs; and to sales made to Walker by this alibi witness. The trial judge then elicited from Walker that charges were brought against Luke but later dropped, with defense counsel pursuing this point on cross and further inquiring into why the charges were dropped.

On the appeal, counsel asserts three bases of reversible error arising from this rebuttal testimony: (1) Walker's testimony regarding defendant's statements and prior transactions with Luke was inadmissible to impeach Luke's credibility because it constituted extrinsic evidence of misconduct for which there had been no conviction. (2) Walker's testimony that charges not resulting in conviction

were brought against Luke for alleged narcotics dealings was inadmissible under this court's ruling in *United States v. Maynard,* 155 U.S.App.D.C. 223, 476 F.2d 1170 (1973). And (3) Walker's testimony regarding defendant's statements was inadmissible to impeach Luke because it constituted hearsay.

■■■■ Ordinarily a witness may not be impeached as to credibility by producing extrinsic evidence of prior instances of misconduct short of conviction. And if the witness stands his ground and denies the alleged misconduct, the examiner must "take his answer" and cannot call other witnesses to prove the discrediting acts, lest the trial spin off into a series of sub-trials on collateral issues both confusing and time-consuming. This rule stands firm enough when the question is one of impeaching the general credibility of the person as a witness. It does not apply, however, so as to limit or exclude proof of conduct by the witness evidencing a specific bias for or against a party. 3A Wigmore, Evidence § 948 (Chadbourn Rev. 1972). "Bias is never classified as a collateral matter which lies beyond the scope of inquiry, nor as a matter on which an examiner is required to take a witness's answer. Bias may be proved by extrinsic evidence even after a witness's disavowal of partiality." 3 Weinstein's Evidence ¶ 607[03], at 607–17 (1975).

■■■■ The dominant principle is that evidence showing the "emotional partiality"[4] of a witness "is always significant in assessing credibility," for "the trier must be sufficiently informed of the underlying relationships, circumstances and influences operating on the witness so that, in light of his experience, he can determine whether a mutation in testimony could reasonably be expected as a probable human reaction. Courts are therefore very liberal in accepting testimony relevant to a showing of bias." 3 Weinstein's Evidence, *supra.* As this court stated in *Maynard* :[5]

---

4. Wigmore finds bias, interest and witness corruption to be varieties of the single quality of "emotional partiality." 3A Wigmore, Evidence § 943, at 778 (Chadbourn Rev. 1972).

5. *Maynard* is discussed at 174 U.S.App.D.C. at ——, 530 F.2d at 1082 *infra.*

In certain situations . . . external facts from which may be inferred a specific bias, or motive to testify in a particular way, are admissible to impeach a witness—e. g., facts which show a familial, employment, or litigious relationship. Since the range of facts from which bias may be inferred is vast, hard and fast rules permitting or excluding specific types of impeachment evidence might be unwise.

155 U.S.App.D.C. at 227, 476 F.2d at 1174 (citations omitted). It is thus a matter for the sound discretion of the trial court whether the proferred impeachment evidence is probative of bias, and if so whether its probative worth is outweighed by its prejudicial impact or should otherwise be excluded.

■ The record, in our view, demonstrates that the rebuttal testimony was not directed at generally discrediting Luke's character or veracity, but was aimed at showing specific matters that were probative of Luke's bias in favor of defendant and against the government. In their testimony on direct, defendant and his alibi witness attempted to paint a picture of a simple friendship involving periodic loans to each other and forswore any contact with Walker. On cross, they

maintained this view, specifically denying the existence of any business relationship and having spoken to or sold drugs to Walker. We hold that it was open to the government to show that there was more here than a simple friendship, to reveal aspects of Luke's relationship evidencing a special partiality toward defendant and particular motive to testify falsely on his behalf.[6] By producing Luke as his alibi witness, and by the testimony on direct characterizing their relationship in casual terms, defendant placed the nature of his relationship to Luke directly in issue, and thereby exposed himself to the government's efforts to show that this friendship entailed a joint venture in drugs traffic, including sales to Officer Walker.

The government indicated its purpose in the colloquy before the bench, that the rebuttal testimony would go to Luke's "credibility and go to a showing of bias" (Tr. 260), and in its disclaimer that it would not go into Luke's arrest or any cases brought against him (Tr. 262). The government's summation further indicates that it sought to pierce the alibi by focusing on Luke's relationship with defendant, rather than to suggest general lack of credibility because of Luke's prior acts of misconduct falling short of a conviction.[7]

---

6. The cases cited by appellant involve either "prior bad acts" impeachment for the purpose of generally discrediting the witness' character for truthfulness, see Foster v. United States, 282 F.2d 222, 224 (10th Cir. 1960); United States v. Banks, 475 F.2d 1367, 1368 (5th Cir. 1973), or the inherently prejudicial rebuttal of a defendant's denial of drug involvement with evidence of his prior drug dealings, see Lee v. United States, 125 U.S.App.D.C. 126, 129, 368 F.2d 834, 837 (1966); United States v. Masino, 275 F.2d 129, 133 (2d Cir. 1960).

The instant case, by contrast, deals with impeachment of defendant's alibi witness by reference to prior drug dealings for the more limited, focused purpose of exposing grounds for biased testimony in the particular case. We draw support from cases like United States v. Musgrave, 483 F.2d 327, 338 (5th Cir.), cert. denied, 414 U.S. 1023, 1025, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973), where the court permitted reference to defense witness' status as co-conspirator even though he had been acquitted because his involvement in the same transaction for which defendant was charged "suggested a personal interest in the

litigation, a potential lack of complete impartiality." Here, like an acquitted accomplice or co-conspirator, Luke also had little reason to fear prosecution, but his involvement with appellant in a joint enterprise in drugs bearing some nexus to the transactions charged in the indictment suggested partiality, and this could be brought out by the government in impeachment for bias.

7. Tr. 291–92:

What about Mr. Luke? Mr. Luke says he doesn't know Officer Walker; never had a conversation with him. The only time he had ever been near him was some time in December when Officer Walker was with another police officer.

However, Mr. Luke was arrested. He was arrested on Officer Walker's identification. He certainly saw him then. He certainly knew him then.

Whatever happened to those charges, for whatever reason, and we were told that the substance believed to have been bought as heroin wasn't heroin, but there was a transaction there. There was contact between

█ The government here simply attempted to show that Luke was not an impartial witness because he and defendant were in business together. Ordinarily, the use of extrinsic evidence toward such a showing of bias would occasion little controversy[8] since reasons for exclusion would rest largely on considerations of convenience and judicial administration. However, where, as here, the rebuttal testimony to show bias of a witness also shows that he was engaged in a criminal enterprise, there is an extra quantum of prejudice: the possibility that the witness will be disbelieved because he is a "bad man," even though the proof does not contain the showing of a conviction that is necessary for an attack on general veracity. Here, as elsewhere in the law of evidence, what is required of the judge is a balancing of the probative value of and need for the evidence against the prejudicial impact. Sometimes this analysis is cursory and appears only by implication: if the prejudice outweighs the benefit, the judge sometimes excludes the evidence with the conclusory comment that the case involves only "collateral" character impeachment; while if high probative value offsets slight prejudice, he may say that the evidence is admissible impeachment for bias. To avoid the possibility that confusion may lurk in such labeling and shorthand, it would be preferable to confront the problem explicitly, acknowledging and weighing both the prejudice and the probative worth of impeachment in the spirit of balancing stressed in the newly effective Federal Rules.[9]

In our view, the trial judge did not abuse his discretion in admitting Walker's rebuttal testimony. It was probative of bias, for it showed that witness Luke was in a joint business enterprise with defendant, a business in which they were both adversaries of the police, and a business not remote in time but an ongoing affair related in subject matter and time to the transactions charged against defendant.

█ Any prejudice was diluted by the fact that Walker's account of what defendant had said regarding his drug venture with Luke did not place defendant in a significantly worse light than the evidence already before the jury. Of course, the evidence of Luke's sales to Walker tended to undercut Luke's testimony and the credibility of appellant's alibi, but this was part of the price to defendant of offering for his alibi a witness who could be impeached for bias. We note that the trial judge held an extensive bench conference with counsel, outside the hearing of the jury, at which these matters were explored prior to his ruling on the admissibility of the rebut-

---

Officer Walker and Mr. Luke. Not only on that day, but other days as well.

He was there. So when Mr. Luke says to you, "I don't know this man," are you to believe him?

When Mr. Luke says to you, "Mr. Robinson was with me at the exact time that this purchase is supposed to be made on November the 8th," are you [to] believe him?

Are you to believe him when Mr. Robinson himself tells Officer Walker, "Ruben and I are in this together, I am having some problems"? Does Mr. Luke have something more than a friendly relationship for the defendant? Does he have something more at stake than just coming in and helping his friend?

While the government's summation also refers to Luke's arrest, this comes after defense counsel "opened the door" to this fact, see 174 U.S.App.D.C. at —— n. 12, 530 F.2d at 1082 n. 12 *infra*.

8. See 3 Weinstein's Evidence ¶ 607[03], at 607–22–24 (1975) ("Relationships between a party and a witness are always relevant to a showing of bias whether the relationship is based on ties of family, sex—heterosexual or homosexual—employment, business, friendship, enmity or fear"); 3A Wigmore, Evidence § 949, at 786 (Chadbourn Rev. 1972) ("The relation of employment, present or past, by one of the parties, is also usually relevant"). *See, e. g., Aetna Insurance Co. v. Paddock*, 301 F.2d 807, 812 (5th Cir. 1962) (action to reform insurance policy; error to exclude evidence that key witness for insured had borrowed money from insured to start his own insurance agency).

9. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Federal Rules of Evidence 403.

tal testimony. Moreover, at the outset of defense counsel's cross-examination of Walker on his rebuttal testimony, the trial judge interrupted to issue a cautionary instruction. While this instruction is inartful, it did serve to instruct the jury that Walker's testimony was admissible for a limited purpose.[10] And as stated above, the government's use of the rebuttal testimony in summation was limited to showing that Luke was a biased witness.

*United States v. Maynard, supra,* does not bar the rebuttal testimony here. There a victim testified that at a visit to his hospital bedside Maynard made inculpatory remarks. Defendant Maynard's sole witness, Mrs. Kemper, contradicted the victim's testimony. Then the government sought to impeach Mrs. Kemper by reference to her arrest and indictment for obstruction of justice growing out of a totally different hospital bedside conversation during which she allegedly sought to persuade the victim not to identify co-defendant Gilbert, her brother. Reference to the arrest and indictment was held to be prejudicial "extra impeachment," serving merely to impeach Mrs. Kemper's general truthfulness, any specific impeachment of Mrs. Kemper for interest having already been fully served by the victim's prior testimony. This evidence may have been relevant to Mrs. Kemper's motive for testifying in an exculpatory manner, but the prejudicial effect outweighed the probative substance.[11] Thus, *Maynard* places limits on impeachment through references to arrests and indictments on unrelated matters that merely provide "extra impeachment" for a witness already shown to have bias.

In the case at bar, the government disclaimed any intention of referring to Luke's arrest or any cases brought against him. It was defense counsel who sought to present that information—because he wanted the benefit of showing that the charges brought against Luke had later been dropped (Tr. 262–63), presumably to suggest that Walker's testimony of Luke's sales was belied by the government's unwillingness to prosecute Luke.[12]

---

**10.** I think I should instruct the jury that these inquiries into Mr. Luke's activities have been permitted by the Court solely on the issue of Mr. Luke's credibility as a witness. Except for the reference to November the 2nd, when Mr. Walker testified that he saw Mr. Luke and the defendant together, the remainder of that testimony is directed to rebut the testimony of Mr. Luke with respect to the matters that were gone into at the time Mr. Luke was on the stand.

One of them that I particularly remember was that he never had any conversation or dealings with Mr. Walker. You will recall that.
(Tr. 269–70)
The instruction confuses impeachment for personal bias with impeachment by contradiction on substantive matters and loosely terms the rebuttal testimony impeachment as to "credibility." However, defense counsel raised no objection at trial, and we do not regard this lack of clarity to be plain error. *Cf. Copes v. United States,* 120 U.S.App.D.C. 234, 237–38, 345 F.2d 723, 726–27 (1964). The cases cited by appellant on this point involved the absence of any immediate limiting instruction rather than the requisite degree of clarity for an instruction that is given. *See United States v. McClain,* 142 U.S.App.D.C. 213, 217–18, 440 F.2d 241, 245–46 (1971); *United States v. Bus-*

*sey,* 139 U.S.App.D.C. 268, 272–73, 432 F.2d 1330, 1334–35 (1970).

**11.** [W]e are persuaded by appellant's argument that the prejudicial effect of the admission of the arrest and charge in this case outweighed its probative substance. Admission of these facts was simply not necessary to show that Mrs. Kemper had good reason to testify as she did. Gueroy's [the complaining witness'] own testimony had already revealed to the jury all the facts on the basis of which Mrs. Kemper could be charged with a crime. Her motive for denying Gueroy's accusations and for testifying about her own actions in an exculpatory manner was unmistakeable. Finally, her being charged with a crime was probative of no more than that the prosecutor, or the grand jury, chose to believe Gueroy and not Mrs. Kemper.

In this context, the extra impeachment provided by proof of arrest and the indictment is marginal.
155 U.S.App.D.C. at 227–28, 476 F.2d at 1174–75.

**12.** We are aware that the court on its own motion elicited the information that Luke had been arrested and that the charges were dropped. Defense counsel did not object, and the record fairly indicates that the court's unsolicited assistance was congruent with the strategy of defense counsel.

The objection that Walker's rebuttal testimony was hearsay, not made at trial, is without merit, since the statement was made by defendant and comes within the admissions exception.[13]

*Affirmed.*

---

**13.** Appellant's reliance on *United States v. Wright*, 160 U.S.App.D.C. 57, 489 F.2d 1181 (1973) is inapposite. *Wright* dealt with the admissibility of impeachment of an alibi witness by her prior inconsistent statements made to the defense investigator where there was some doubt that the statements were offered for this limited purpose and, in any event, a proper foundation had not been laid for their introduction. The out-of-court statement here was made by appellant, and a foundation is not required for use of a party's admissions whether or not he is a witness. 4 Wigmore, Evidence § 1051, at 12 (Chadbourn Rev. 1972).