Warren JEFFERSON, Appellant,

v.

UNITED STATES, Appellee.

Melvin DOWNING, Appellant,

v.

UNITED STATES, Appellee.

Nos. 80–103, 81–1376, 79–1151
and 81–1301.

District of Columbia Court of Appeals.

Argued Oct. 12, 1982.
Decided July 7, 1983.

Timothy Dyk, Washington, D.C., appointed by the court, with whom Richard F. Goodstein, Washington, D.C., appointed by the court, was on the brief, for appellant Jefferson.

James R. Klimaski, Washington, D.C., appointed by the court, with whom Katharyn

M. Marks, Washington, D.C., was on the brief, for appellant Downing.

E. Anne McKinsey, Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, and Daniel S. Seikaly, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and NEBEKER and FERREN, Associate Judges.

PER CURIAM:

This is an appeal from the convictions of Jefferson and Downing for felony murder while armed [1], and armed robbery.[2] Jefferson additionally appeals his conviction for carrying a pistol without a license [3], and Downing appeals his conviction of being an accessory after the fact.[4] Jefferson argued he is entitled to a new trial because the government's principal witness recanted his testimony, and because the trial court erred in admitting evidence of a separate offense, the trial of which had been severed. Downing contends the trial judge erred in denying his Motion of Acquittal because the evidence was insufficient to support his conviction and that a mistrial should have been declared after a government rebuttal witness implicated him in another crime. Both appellants further claim that misstatements by the prosecutor in summation denied them a fair trial. We conclude that the prosecutorial statements concerning Downing, if error, were harmless and that the evidence was sufficient to support his conviction. Thus, we affirm his conviction. Jefferson's convictions must be reversed because the lower court abused its discretion in permitting the introduction of evidence from the separate offense.

I

On the evening of November 25, 1978, appellants Warren Jefferson and Melvin Downing were drinking beer and ingesting narcotics with Herman Williams and Bruce Dawson. Jefferson toyed with a .22 calibre pistol while consuming the narcotics. When the supply of drugs had been exhausted, they decided to get some more. Wilbert Anderson joined them for the ride. As they were driving near the corner of New Jersey and N Streets, N.W., Williams spotted two men, George Solomon and Walter Robinson, exchanging money on the street, and ordered the car to stop near them. Williams, sitting in the front passenger's seat of the car, asked these two men for some PCP. He then got out of the car alone, and approached the two men, brandishing a gun. Solomon surrendered a lady's purse containing $15.65 and some bus tokens; Robinson refused to relinquish anything. Jefferson testified that he then got out of the car for the purpose of extracting Williams from the altercation and to prevent its escalation. Jefferson stated that Williams resisted his peace-making attempts and fired two shots, killing Mr. Robinson. Williams testified that Jefferson grabbed the gun from him and fired the fatal shots. Solomon's testimony did not specify which of the two fired the weapon; he testified only that "they fired the shots." Neither Anderson nor Dawson were able to see which of the two fired the shots. Downing did not testify at trial.

After the shooting, Downing moved from the back seat of the car to the driver's seat. Once Jefferson and Williams were back in the car, Downing drove off at a high rate of speed, nearly colliding with a car as he rounded the corner. As they drove off, according to Anderson, Williams told Jefferson he had "made a bad move." According only to Williams, Jefferson responded, "Nobody's going to buck on me." Before dropping him off, Downing and Jefferson warned Anderson not to say anything about the incident. Both men threatened to hurt Anderson, and Downing added that Ander-

1. D.C.Code 1981, § 22–2401.

2. D.C.Code 1981, § 22–2901.

3. D.C.Code 1981, § 22–3203.

4. D.C.Code 1981, § 22–106.

son's father's car might "get blew up" if anything was heard about that night. Upon returning to Jefferson's house, the four gathered in the basement where Williams distributed fourteen dollars, two to Downing, five to Jefferson and kept seven for himself.

On December 3, 1978, Jefferson, Williams and Downing were arrested in connection with an assault committed earlier that day. They were charged with felony murder, armed robbery and attempted armed robbery for their actions on November 25 and with a series of charges for the December 3, 1978 assault which were later severed and tried separately. Additionally as to the November 25 events, Downing was charged with being an accessory after the fact and Jefferson was charged with carrying a pistol without a license.

In exchange for leave to plead guilty to a reduced charge of second-degree murder, Williams turned "states evidence" and testified that Jefferson fired the fatal shots. Based in part on this evidence, Jefferson and Downing were found guilty on each of the charges.

On two occasions subsequent to the trial, once in an affidavit and once during the trial for the December 3 assault, Williams confirmed that he had testified falsely in this case, and that it was he, not Jefferson, who fired the shots. Based on this evidence, Jefferson filed a Motion for New Trial on March 16, 1981. His appeal was stayed by this court on April 2, 1981. On September 16, 1981, after briefing and oral argument but without an evidentiary hearing, Jefferson's Motion for New Trial was denied. He appealed this denial. His two appeals were consolidated with Downing's appeal.

## II

■ While mere presence at the scene of a crime is insufficient to establish criminal participation in the offense, proof of presence at the scene of a crime plus conduct which designedly encourages or facilitates a crime will support an inference of guilty participation in the crime as an aider and abettor. *Quarles v. United States,* 308 A.2d 773, 774–75 (D.C.1973).

■ To establish that Downing had aided and abetted the offenses alleged, the government was required to offer proof that: (a) a crime was committed by someone; (b) the accused assisted or participated in its commission, and (c) his participation was with guilty knowledge. *Byrd v. United States,* 364 A.2d 1215, 1219 (D.C.1977).[5] When viewed in the light most favorable to the prosecution, *Glass v. United States,* 395 A.2d 796, 806 (D.C.1978), and giving the government the benefit of all inferences, *Calhoun v. United States,* 369 A.2d 605, 607 (D.C.1977), the evidence meets the standard. Mr. Robinson's murder fulfills the first element. Melvin Downing moved from the back seat to the driver's seat during the altercation. As soon as the shots were fired, and Jefferson and Williams got back in the car, Downing drove off, nearly colliding with another car in his haste as he rounded a corner. When the group dropped off their apparently unwitting passenger Anderson, Downing warned him not to tell anyone what he had witnessed, and threatened to "blew up" Anderson's father's car if he did. These factors are sufficient to permit a jury to conclude that Downing assisted or participated in the commission of a crime.

Mr. Downing's participation in the events of November 25 was sufficient also to enable a jury to infer that he had "guilty knowledge" of Jefferson's and Williams' intentions, thus meeting the third element. Downing was present when the group exhausted its supply of PCP and decided to go

5. This court has also phrased the elements as follows: (a) the aider and abettor associated himself with the person or persons who committed the offense; (b) that he participated in it, either directly or indirectly as something he wished to see accomplished, and (c) that he intended by his actions to assure its success. *In re R.A.B.,* 399 A.2d 81, 82 (D.C.1979), citing *Quarles, supra.*

out and get some more. He was present when Jefferson was "playing with the gun" in Dawson's basement, and later when Williams ordered the car to a halt and got out with the gun in his hand. His act of moving to the front seat after hearing the shots and spiriting the two away was with the knowledge that he was facilitating their escape. Since an aider and abettor is liable as a principal in the District of Columbia, Downing's convictions for felony murder and armed robbery were correct. *See* D.C. Code § 22–105 (1981).

### III

Downing's allegations, that the prosecutor's mischaracterization of his threat to Anderson, constituted reversible error and that the failure to grant a mistrial when a rebuttal witness implicated Downing in the December 3 assault was error, are meritless. The prosecutor's imprecise statement that Downing had threatened to kill Anderson, does not rise to the level of reversible error. *See Smith v. United States,* 315 A.2d 163, 166 (D.C.1974). The implication of Downing in the subsequent assault was also harmless. Officer Armstrong, a government rebuttal witness, erroneously testified that Downing was the man he transported to a hospital for a show up identification in connection with the December 3 assault. The brief mention of Downing's name, however, was not repeated or reinforced by any other rebuttal witness. Additionally, if the jury did in fact draw the inference that Downing was involved, they could have done so without Officer Armstrong's testimony. Officer Butell had already testified in the government's case in chief, properly and without objection, that Downing was in the car that he stopped on December 3, 1976. Officer Armstrong's reaffirmation of that fact was therefore harmless. *See Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

**6.** The propriety of this exercise of discretion may be assessed by reference to the factors laid

### IV

When confronted with the pretrial motion to sever charges from the December 3 assault from the present case, the trial court, in an appropriate exercise of discretion, concluded that severance was required. As stated in *Drew v. United States,* 118 U.S.App.D.C. 11, 14, 331 F.2d 85, 88 (1964), severance of offenses [6] is appropriate when, *inter alia,* "the jury may use the evidence of one of the crimes to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged or the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find." In this case, on cross-examination, Jefferson denied knowledge that the incident of November 25 had been planned. In an attempt to rebut Jefferson, the government sought to introduce evidence of the December 3 assault, ostensibly for the limited purpose of showing that Jefferson did "know" the robbery in this case was planned. Counsel for Jefferson requested a ruling concerning the admissibility of this evidence, and the court ruled, in essence, that if any defendant took the stand, that defendant could be questioned about the other crimes.

The principle behind the severance of offenses is to prevent extraneous and prejudicial evidence and issues from entering the trial. *See Drew v. United States, supra,* 118 U.S.App.D.C. at 140, 331 F.2d at 88. The same principle should be invoked when considering the admissibility of other crimes evidence. The admission of evidence of the December 3 assault was, in essence, a contradictory ruling to the severance ruling. Nothing transpired, of record, to justify admission of this evidence. Consequently we hold that admission of this evidence was error. *See Johnson v. United States, supra* note 6.

We have mandated that when an evidentiary foundation is laid for the admission of

out in *Johnson v. United States,* 398 A.2d 354 (D.C.1979).

other crimes evidence, the trial court must determine whether the prejudicial impact outweighs the probative value of the evidence. *Light v. United States,* 360 A.2d 479, 480 (D.C.1976). Given the judicial presumption in favor of joinder, *Cunningham v. United States,* 408 A.2d 1240, 1243 (D.C. 1979); *Hall v. United States,* 83 U.S.App. D.C. 166, 171, 168 F.2d 161, 166, *cert. denied,* 334 U.S. 853, 68 S.Ct. 1509, 92 L.Ed. 1775 (1948); *United States v. Bridgeman,* 173 U.S.App.D.C. 150, 523 F.2d 1099 (1975), *cert. denied,* 425 U.S. 961, 96 S.Ct. 1743, 48 L.Ed.2d 206 (1976), for reasons of judicial economy, great weight must be accorded a trial court's determination that severance is mandated. However, we cannot approve the decision here to admit evidence of the December 3 assault. In our view, the prejudicial impact of admission of this evidence outweighed its probative value, especially in light of the initial ruling of the court. When the admission of evidence otherwise severed from the trial is involved, a circumspect balancing and not a *sub silentio* consideration is required. A proffer, out of the hearing of the jury, of the proposed other crimes evidence would have provided an appropriate forum for the determination whether the probative value of this evidence outweighed its potential for prejudice and confusion. Thus, the admission of such rebuttal evidence was error amounting to an abuse of discretion. Jefferson's convictions must be reversed.[7]

*So ordered.*

NEBEKER, Associate Judge, dissenting:

I respectfully dissent from the majority's determination that appellant Jefferson's conviction should be reversed. Admittedly, it might initially appear that the trial court issued contradictory rulings with respect to other crimes evidence in this case, having at first granted appellant Downing's motion for severance of counts yet later allowing evidence of those severed counts to be admitted against the testifying Jefferson. However, any confusion regarding these

rulings disappears when they are viewed in context.

The impact of the trial court's severance of counts was to disallow any reference by the government to the December 3rd incident when presenting their case in chief for the November 25th incident. But, this preclusion did not extend to the appellants an impenetrable shield against *any* use of the December 3rd evidence. Upon taking the stand, Jefferson denied any knowledge of Williams' purpose in alighting from the car or of having any intent to assist in robbing Soloman and Robinson. This testimony placed in issue Jefferson's credibility with regard to his purported lack of knowledge or intent to rob. The evidence of the December 3rd incident, inadmissible for affirmative use by the government because of the severance ruling, became admissible for impeachment purposes. For, "there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." *Harris v. New York,* 401 U.S. 222, 224, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971), quoting *Walder v. United States,* 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954).

Thus, the trial court correctly recognized that the appellant could not utilize the protection afforded him by the severance of the counts as a shield against the "traditional truth-testing devices of the adversary process." *Id.* 401 U.S. at 225, 91 S.Ct. at 645. Once Jefferson exercised his privilege to take the stand in his own behalf, he was under an obligation to speak truthfully and accurately. The trial court's earlier severance order should not be "perverted into a license to commit perjury" by way of a defense free from the risk of confrontation with evidence of complicity in a similar offense within a matter of days.

---

7. Jefferson's convictions having been reversed on these grounds, it is not necessary to address the issues raised by the recantation, nor to discuss the alleged prosecutorial misconduct.