**Victor T. MORENO, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 82–1471, 82–1472.**

District of Columbia Court of Appeals.

Argued May 2, 1984.
Decided Oct. 16, 1984.

Richard S. Greenlee, Public Defender Service, Washington, D.C., with whom James Klein, Public Defender Service, Washington, D.C., was on brief, for appellant.

Helen M. Bollwerk, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Thomas J. Tourish, Jr., and David H. Saffern, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEBEKER, MACK and BELSON, Associate Judges.

NEBEKER, Associate Judge.

In November of 1981, appellant was indicted on three counts of assault with intent to commit rape, D.C.Code § 22–501 (1981), and three counts of second-degree burglary, *id.* § 22–1801(b), arising from three separate assaults on three different women. In February of 1982, on appellant's motion, the trial judge[1] severed the three incidents for trial. In March of 1982, the first trial commenced on the initial two counts of the indictment. The event in that trial will be referred to as "the first incident." After hearing the evidence, the jury acquitted appellant of the charged crimes but found him guilty of the lesser included offenses of simple assault, *id.* § 22–504, and unlawful entry, *id.* § 22–3102, respectively.

Prior to appellant's second trial, a different judge granted the government's motion to introduce evidence from the first inci-

---

1. The trial judge on the motion to sever and in the first trial was Judge Henry H. Kennedy.

dent on the issues of identity and intent under *Drew v. United States*, 118 U.S.App. D.C. 11, 331 F.2d 85 (1964),[2] in the second trial ("the second incident"). A stipulated proffer of the evidence from the first incident was read into evidence. Ultimately, appellant was acquitted of the assault with intent to rape count but found guilty of second-degree burglary. It is from this conviction that appellant appeals.

Appellant challenges three rulings of the trial judge: (1) the trial court's admission under *Drew* of a stipulated proffer of the evidence from the first incident when it is claimed that the prior severance ruling was law of the case; (2) the trial court's denial of appellant's motion for a new trial asserting that his acquittal on the assault with intent to commit rape count in the first incident forbade government use of evidence from that case in the second trial to show intent; and (3) the trial court's limitation of cross-examination of the complainant on her alleged racial bias. We affirm.

## I

A brief exposition of the circumstances surrounding the severance and *Drew* rulings is necessary to consider properly the first issue presented for review. Appellant urges that the initial ruling which severed the three trials became law of the case and prevented the second trial judge from allowing introduction, under *Drew*, of evidence from the first trial in the second trial.

The motion to sever the counts of the indictment asserted that a joint trial of the separate incidents would create substantial prejudice. The government responded that joinder was proper and that severance was not required because all three incidents involved separate and distinct offenses that would be mutually admissible at separate trials to show identity. After hearing extensive argument on the motion, the trial court ordered the three incidents severed.

The trial court held, primarily, that he did not see the three incidents as constituting signature crimes, and that he found a distinct danger that a jury might amalgamate the evidence to appellant's prejudice.

Following the first trial, the second incident was scheduled for trial before a different judge. The government filed a pretrial motion seeking to admit evidence of the first assault in the second case for its relevancy on the issues of identity and intent. The motion contained an evidentiary proffer of the evidence in both incidents. At the extended argument on the motion, the court noted that it did not view the severance ruling as law of the case on the question of the admissibility of the first incident evidence under a *Drew* theory. The court continued:

> [T]here is a difference ... between severance and a straight *Drew* question. Severance involves potential amalgamation of the evidence and that is a risk here to a degree....
>
> Second is the possibility of prejudice because of inconsistent defenses which is not an issue in a straight *Drew* matter. And third, the question of reciprocal admissibility. And the straight pure *Drew* question is whether the evidence is probative and sufficiently probative in light of its unduly prejudicial nature as to motive, intent, common scheme or plan and identity.

Tr. at 201. The trial court granted the government's motion and the evidence in the form of a sterile stipulation rather than vivid testimony was presented at trial.

Appellant's arguments to the contrary, we are not persuaded that the threshold "law of the case" question is a troubling one under the facts of this case. We concur generally in the trial judge's discussion of the differences "between severance and a straight *Drew* question." With respect to the government's *Drew* motion, the concern with amalgamation of the evidence

---

**2.** Judge Wolf, who ruled on the government's *Drew* motion and who presided at the second trial, assumed Judge Kennedy's trial calendar.

had been reduced by the conclusion of the first trial and by the distillation of its evidence into a stipulation. The potential harm of inconsistent defenses was no longer present, and the probative-prejudice balancing was adjusted to account for legitimate prosecutorial need for the evidence. There are genuine and substantive differences between severance and *Drew* questions. Thus, though it would be misleading not to acknowledge the similar approaches to severance and "other crimes" rulings, it would be equally fallacious to conclude that the differences are so minor as to require in every case that a severance ruling be law of the case for subsequent evidentiary rulings.

We find that our holding in *Jefferson v. United States*, 463 A.2d 681 (D.C.1983), necessarily disposes of any remnant ambiguities in this area of the law. There, we held that the trial judge had committed reversible error when he had effectively reversed his own earlier severance ruling by permitting introduction of other crimes evidence for a limited purpose. *Id.* at 684–85. We did not hold, however, that the severance ruling was law of the case. Rather, we reversed because the record did not reveal that the trial judge had adequately addressed the central *Drew* inquiry of whether the probative value of the evidence sought to be introduced outweighed its prejudicial impact. *Id.* at 685. Additionally, we noted that a prior severance ruling must be given great weight in any later *Drew* ruling, within the same case, because of the similar concerns underlying each issue. *Id.* We concluded that "When the admission of evidence otherwise severed from the trial is involved, a circum-

spect balancing [of probative value and prejudicial impact] and not a *sub-silentio* consideration is required." *Id.* at 685.

▇▇▇▇ Addressing the trial judge's ruling in this light, we are persuaded that the complete pretrial and trial proceedings demonstrate a "circumspect balancing" of probative value and prejudicial impact. He was particularly attentive, following his ruling on admissibility, to mitigating the prejudicial impact of the stipulation as much as possible. Initially, the record reveals the trial judge's awareness of the nuances of the *Drew* question as presented in the context of the prior severance ruling.[3] Most persuasive, however, is the trial judge's subsequent care in circumscribing the introduction and use of the evidence by way of stipulation. Despite vigorous government objection, the trial judge required that this evidence be introduced in that fashion. This demonstrated an appropriate and continuing concern with the prejudicial impact of the evidence. There is ample record support upon which to conclude that the trial judge gave requisite deference to the prior severance ruling and adequately addressed the competing concerns essential to a subsequent *Drew* ruling. We hold that the admission of the stipulation in the second trial was not error.[4]

## II

Appellant's second allegation of error again concerns the introduction of the stipulation. Appellant claims that his partial acquittal in the first incident on both the assault with intent to commit rape and burglary counts precludes introduction of that evidence in this, the second trial, on

---

3. We do not think that the absence of an explicit statement of reasons for Judge Wolf's ruling is fatal. Judge Wolf's pervasive concern with the *Drew* question throughout the trial provides an adequate basis for concluding that the circumspect balancing we require was undertaken.

4. We hold that Judge Wolf's admission of the statement by the first victim immediately following the assault to the effect that a man had tried to *rape* her was not error. The fact that

Judge Kennedy had ordered the statement sanitized (to exclude the word rape) is irrelevant. Moreover, the statement may properly be viewed as an excited utterance, and as such it was admissible. *See Fitzgerald v. United States*, 443 A.2d 1295, 1303–04 (D.C.1982) (en banc). In any event, any assumed error was harmless since appellant was acquitted of assault with intent to commit rape in this case. *See* discussion *ante*.

the issue of intent. Appellant urges that the acquittals demonstrate that the jury found conclusively against the government on the specific intent question.

■ The use of evidence, in a subsequent trial, which has been the subject of a prior acquittal is a divisive issue.[5] Nevertheless, it is urged that we are bound under *M.A.P. v. Ryan*, 285 A.2d 310 (D.C.1971), by the case of *Green v. United States*, 138 U.S.App.D.C. 184, 426 F.2d 661 (1970), which held that once a defendant has been acquitted of an offense, evidence of that offense could not be used as proof that he committed another crime. *Id.; see United States v. Day*, 192 U.S.App.D.C. 252, 591 F.2d 861 (1978). We do not dispute the binding effect of this holding. However, we hold that it does not apply to this case.

First, review of the cases addressing the admissibility of such evidence in subsequent trials, including *Green* and *Day, supra*, reveals that they all involved outright acquittals. Here, appellant was convicted in the first incident of the lesser included offenses of simple assault and unlawful entry. Appellant, at the least, was found to possess a general criminal intent respecting the incident.

Second, the evidence was admitted by the trial judge for multiple purposes—only one of which arguably has been impacted by *res judicata*. It was admitted as it bore on common scheme or plan and identity. As

to these—particularly identity which had been established in the first trial—no preclusive effect can be found from the prior acquittal in view of the convictions accompanying it.

■ Moreover, the acquittal of assault with intent to commit rape in this case makes harmless any arguable error arising from the acquittal in the first instances.[6]

### III

Appellant's final contention is that the trial court improperly limited cross-examination of complainant concerning her alleged racial bias. Specifically, when counsel for appellant asked complainant whether she had stated to the defense investigator that she was "angry at the nigger who had done this to [me]," [7] the government's objection was sustained. During a colloquy at the bench, the trial judge reasoned that such a line of questioning was unjustified because defense counsel could not demonstrate a specific prejudice toward defendant, but only a general prejudice against blacks. The trial court ruled this lack of specificity made the proposed line of questioning collateral and unnecessarily inflammatory. Assuming, *arguendo*, that this limitation on cross-examination was error, our review of the record persuades us that it was harmless.

The nub of the trial court's ruling was that a general bias against blacks was inap-

**5.** Those circuits which permit use of such evidence apparently reason that the prior acquittal goes toward the weight to be afforded the evidence by the jury in the subsequent trial. *See Oliphant v. Koehler*, 594 F.2d 547, 554–55 (6th Cir.), *cert. denied*, 444 U.S. 877, 100 S.Ct. 162, 62 L.Ed.2d 105 (1979); *King v. Brewer*, 577 F.2d 435, 439–41 (8th Cir.1978), *cert. denied*, 440 U.S. 918, 99 S.Ct. 1238, 59 L.Ed.2d 468 (1979); *United States v. Moore*, 522 F.2d 1068, 1079 (9th Cir.1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976); *United States v. Addington*, 471 F.2d 560, 567 n. 5 (10th Cir. 1973). Other circuits, however, forbid outright the use of such evidence. *See United States v. Keller*, 624 F.2d 1154, 1157 (3d Cir.1980); *United States v. Mespoulede*, 597 F.2d 329, 334–35 (2d Cir.1979); *Blackburn v. Cross*, 510 F.2d 1014 (5th Cir.1975); *Wingate v. Wainwright*, 464 F.2d 209, 212–14 (5th Cir.1972); *Sabin v. Israel*, 554 F.Supp. 390 (E.D.Wis.1983).

**6.** Appellant claims that the trial judge compounded his error by informing the jury that the first jury had not known of the assault, by permitting introduction of the unredacted excited utterance, and by telling the jury they were not bound by the earlier verdicts. Noting that we found no error in the introduction of the stipulation, we find the above actions to be an appropriate method of apprising the jury of the circumstances surrounding the first jury's verdict. We hold that the introduction of these additional facts did not deny appellant a fair trial.

**7.** Tr. at 364.

propriate grist for racial bias cross-examination. Initially, we do not think that the case law necessarily supports this proposition. *See generally Chipman v. Mercer,* 628 F.2d 528 (9th Cir.1980); *United States v. Kartman,* 417 F.2d 893 (9th Cir.1969). Moreover, we can perceive a good argument for allowing further cross-examination in this case.

The government's contention that Miss Buxton's alleged general racial bias is collateral remains questionable. Buxton's documented difficulty with identifying her assailant might easily be associated with racial bias by the jury. Put hypothetically, if Miss Buxton is shown to dislike blacks in general, then she may be unconcerned or inattentive to accurately choosing her assailant from a series of photographs or a lineup composed entirely of blacks. Miss Buxton testified that "all blacks look alike"[8] to her. She might, therefore, see little harm in a mistaken selection. Certainly, such a scenario would be buttressed by cross-examination of Miss Buxton on any general racial bias.

Nevertheless, we are persuaded that any error was harmless. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Contrary to appellant's assertion, this was not an *in limine* curtailment of cross-examination. We, therefore, must assess whether it was clear beyond a reasonable doubt, "(1) that the defendant would have been convicted without the witness' testimony, or (2) that the restricted line of inquiry would not have weakened the impact of the witness' testimony." *Springer v. United States,* 388 A.2d 846, 856 (D.C.1978) (citation omitted).

Review of the transcript demonstrates that defense counsel did in fact develop a theme of racial bias during cross-examination of the complainant. Buxton acknowledged on four separate occasions that she felt or believed that all blacks looked alike. She also admitted her difficulty, and the above reason therefor, in attempting to identify her assailant. Further, when asked why she thought her assailant's presence in the laundry room was unusual, she responded that tenants "just don't see colored people in—black people in there."[9] We conclude that the jury had substantial evidence, properly before them, on which to judge the question of Miss Buxton's racial bias, and its impact on the accuracy of her identification.

 The inflammatory nature of racial bias is such that it requires careful shepherding in its presentation to the jury. *See United States v. Hinkle,* 145 U.S.App.D.C. 234, 238, 448 F.2d 1157, 1161 (1971). Trial court limitation of racial bias cross-examination may therefore be appropriate. Here, defense counsel was able to put before the jury the claim that complainant harbored racial bias.[10] Under the circumstances, we hold that it is clear beyond a reasonable doubt that the excluded cross-examination would not have further weakened the impact of complainant's testimony. *Springer, supra,* 388 A.2d at 856.

*Affirmed.*

---

**8.** Tr. at 346, 347, 348, 356.

**9.** Tr. at 332.

**10.** We note also that defense counsel weaved the racial bias argument into his closing remarks: I ... said to you she doesn't know what happened. And I say that for two reasons. I want you to remember these reasons. First, paranoia about black *people.* Secondly, fainting. And now, what did she say about the

man who walked into the laundry room? She says she thought it was unusual just for a black man to walk into the laundry room. We just don't see colored people. I asked her, well, you had no reason to think he was going to attack you, did you? And she says, I couldn't tell that. So just because this man came into her laundry room, she's beginning to think, boy, boy, he might attack me.
Tr. at 854.