George L. SAMUELS, Appellant,

v.

UNITED STATES, Appellee.

No. 88–610.

District of Columbia Court of Appeals.

Submitted Jan. 10, 1992.
Decided Feb. 7, 1992.

James W. Rudasill, Jr., appointed by this court, was on the brief for appellant.

Jay B. Stephens, U.S. Atty., and John R. Fisher, Helen M. Bollwerk, David Schertler and Sherri L. Evans, Asst. U.S. Attys., were on the brief for appellee.

Before ROGERS, Chief Judge, SCHWELB, Associate Judge, and KERN, Senior Judge.

ROGERS, Chief Judge:

Appellant George Samuels appeals his conviction by a jury of assault with intent to commit robbery while armed, D.C.Code §§ 22–501, –3202 (1989 Repl.), and carrying a pistol without a license, D.C.Code § 22–3204 (1988 Repl.), on the grounds that the trial judge abused his discretion by allowing the government, in an attempt to demonstrate bias, to cross-examine a defense witness on her receipt of PCP from, and use of PCP with, appellant after granting appellant's motions to sever the narcotics counts from the original indictment. We affirm.

I

Belinda Fowler testified that at 3:00 a.m. on November 3, 1987, she observed appel-

lant and two females walking toward her on Wheeler Road. After she stopped at a telephone booth, appellant approached her and said, "Bitch, give me your coat." When she refused, appellant repeated his demand and opened his jacket to reveal the butt of a gun. Unmoved by this threat, Ms. Fowler said "you better go ahead," at which point appellant paused and then rejoined his female companions. Soon thereafter, Ms. Fowler stopped a police car and, after a brief search, the police arrested appellant and the two females.

Defense witness Michone Nathan testified that she and her sister had met appellant on the night of the alleged assault on Ms. Fowler. According to Ms. Nathan, she had previously been introduced to appellant by a former boyfriend but did not consider him a close friend. Furthermore, although she and her sister had walked with appellant past a telephone booth on Wheeler Road that night, Ms. Nathan claimed she did not see appellant stop or talk to anyone in the booth.

On cross-examination, the government asked Ms. Nathan what appellant first said to her the night of the alleged attack. When Ms. Nathan responded "loveboat," defense counsel objected. The trial judge conducted a *voir dire* of Ms. Nathan's potential testimony and after hearing argument of counsel, ruled that the government could question Ms. Nathan to elicit testimony concerning her use of PCP with, and receipt of PCP from, appellant for the limited purpose of establishing her bias.[1] The trial judge concluded that such testimony was more probative of bias than prejudicial because defense counsel had raised the issue of appellant's relationship with Ms. Nathan by eliciting testimony from Ms. Nathan that appellant was not a close friend.

The judge gave a limiting instruction to the jury.

## II

█ Appellant contends that the trial judge erred by allowing Ms. Nathan to testify concerning appellant's use and distribution of PCP because the testimony was inadmissible both as "other crimes" evidence and to show bias. Appellant's contention that Ms. Nathan's testimony constitutes inadmissable "other crimes" evidence, relying on *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964), and *Jefferson v. United States*, 463 A.2d 681 (D.C.1983), is meritless. *Sherer v. United States*, 470 A.2d 732, 738 n. 5 (D.C. 1983) (*Drew* inapplicable to evidence admitted strictly for impeachment purposes); *see also Drew, supra,* 118 U.S.App.D.C. at 16 n. 10, 331 F.2d at 90 n. 10 (recognizing circumstances in which "prior convictions may be utilized for purposes of impeachment").[2] In *Sherer,* the court indicated that *Drew* "restricts the introduction ... of an accused's prior crimes or bad acts" "*as substantive evidence* " and is, thus, "analytically distinct" from the rules governing admissibility of impeachment evidence. *Sherer, supra,* 470 A.2d at 738 n. 5 (emphasis added).[3] Therefore, since Ms. Nathan's testimony concerning her use of PCP with, and receipt of PCP from, appellant was only admitted for the limited purpose of demonstrating bias, the fact that such testimony did not satisfy the *Drew* test is irrelevant.

█ Similarly, appellant's contention that Ms. Nathan's testimony was inadmissable to prove bias is meritless. The scope of cross-examination on the issue of a witness' bias is "a matter within the sound discretion of the trial court." *See Adams*

1. The judge ruled that the government could not question Ms. Nathan about appellant's sale of PCP to her, reasoning that such proof, without evidence of an "ongoing buyer/seller relationship," would not tend to demonstrate bias.

2. The fact that this court required "other crimes evidence" to satisfy one of the five major *Drew* exceptions in *Jones v. United States*, 385 A.2d 750 (D.C.1978), does not contradict this princi-

ple. In *Jones* the court noted that the government had chosen not to use the other crimes evidence "strictly for impeachment" and, if it had, an entirely different analysis than that of *Drew* would have to be applied to reach a conclusion of inadmissibility. *Id.* at 753 n. 2.

3. *See also Campbell v. United States,* 450 A.2d 428 (D.C.1982).

*v. United States*, 379 A.2d 961, 965 (D.C. 1977). The court has stated that:

A party's right to undertake demonstration of the bias of his adversary's witness coexists on the same plane with the adversary's prerogative to use the witness. Such an effort may properly solicit over a wide range any information of potential value to the trier of fact in the assessment of credibility....

*Best v. United States*, 328 A.2d 378, 381 (D.C.1974) (quoting *Wynn v. United States*, 130 U.S.App.D.C. 60, 62, 397 F.2d 621, 623 (1967)).

As the trial judge noted, by seeking to "establish a distance between [Ms. Nathan] and [appellant]," the defense sought to give the jury an impression that "[Ms. Nathan] would have no motive to ... give testimony that would tend to help [appellant]." This, the trial judge found, "opened the door" for the government to demonstrate her bias by cross-examining her on her receipt of PCP from, and use of PCP with, appellant. A jury could reasonably find that such testimony would indicate that Ms. Nathan could have a greater desire to protect a person with whom she used, and from whom she had received, narcotics, than a mere passing acquaintance. Contrary to appellant's assertions, the testimony was relevant, *United States v. Abel*, 469 U.S. 45, 50–51, 105 S.Ct. 465, 468, 83 L.Ed.2d 450 (1984), and the trial judge did not abuse his discretion by allowing the government to elicit such testimony during cross-examination, even though it revealed appellant's prior "bad acts." *Adams v. United States*, 379 A.2d 961, 965 (D.C.1977); *United States v. Robinson*, 174 U.S.App.D.C. 224, 227, 530 F.2d 1076, 1079 (1976).

### III.

■ Finally, regarding appellant's general contention—that the trial judge erred by allowing the government to impeach Ms. Nathan by showing that appellant had given her PCP after the offense for which he was on trial when the judge had previously granted appellant's motion to sever the narcotics counts of the indictment—we find no abuse of discretion under the particular circumstances of this case.

With the government's consent, the trial judge granted appellant's pretrial motion to sever the two narcotics counts of the indictment ostensibly because the jury might infer a general criminal propensity and tend to consolidate the evidence in an unfair manner. At trial the prosecutor argued that he should be allowed to impeach the defense witness to show bias since defense counsel had inquired of the witness on direct examination how long the witness had known appellant and whether appellant was a close friend of the witness. Defense counsel objected on the grounds of *Drew, supra,* and the lack of probative value of such testimony. The trial judge, noting the requirements of *Jefferson*, 463 A.2d at 685, conducted a *voir dire* of the witness out of the presence of the jury and also heard argument from counsel regarding the probative and prejudicial effect of the evidence.

Finding that the evidence was "extremely prejudicial" but focusing on the fact that defense counsel had inquired whether appellant and the witness were close friends, the judge noted that the *voir dire* testimony, which indicated that appellant, in addition to selling PCP to the witness, had also given her some PCP and smoked it with her, "tend[ed] to suggest that conceivably there is a little closer relationship than what [the witness] is indicating." Further, the judge observed that defense counsel made a tactical decision to bring out the nature of their relationship and to distance the witness from appellant with an "intent of ... bolstering [the witness']" testimony. Thus, the judge concluded, "the Government is at a distinct disadvantage ... [unless allowed] some leeway to establish the nature of the relationship between them."

Basically, the judge was concerned that unless the government was allowed to inquire, the jury would be left with a misimpression of the relationship between the parties. Observing that the jury already knew that the witness had met appellant once the previous summer, and that they had talked on the night of the robbery, the

judge concluded that evidence relating to appellant's sale of PCP to the witness would not tend to suggest bias, but the converse was true with regard to appellant "having induced her to go over and smoke some PCP with him." The judge, therefore, found that "there has been changed circumstances here" since the grant of the motion for severance, unlike the situation in *Jefferson, supra,* 463 A.2d at 684 (after the severance ruling, "[n]othing transpired, of record, to justify admission of this evidence"). The judge concluded that the probative value outweighed the potential prejudice with the cautionary instruction to the jury that the evidence of drug use was irrelevant to the crimes for which appellant was standing trial.

Given the "great weight [that] must be accorded a trial court's determination that a severance is mandated," *Jefferson, supra,* 463 A.2d at 685, the critical finding by the trial judge was that there had been a changed circumstance since the severance ruling.[4] That circumstance arose as a result of a knowing decision by defense counsel to probe an area on direct examination of a defense witness which counsel knew would touch upon the fact that the witness' relationship to appellant was based on their use of PCP together immediately after the assault.[5] This is the situation which *Jefferson, supra,* 463 A.2d at 684, indicated might warrant cross-examination regarding an area underlying the reason for a previous severance of counts. *See Moreno v. United States,* 482 A.2d 1233, 1236 (D.C.

1984), *cert. denied,* 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985) (affirming admission of previously severed evidence where trial judge adequately conducted "a 'circumspect balancing' of probative value and prejudicial impact.")

Although the nature of the cross-examination is troubling given, as the trial judge found, its extreme prejudice, the record reveals that the trial judge gave appropriate deference to the severance ruling and carefully weighed the probative value of the evidence against its prejudicial effect in view of defense counsel's direct examination. *See id.; Robinson v. United States,* 513 A.2d 218 (D.C.1986). Under the particular circumstances, the judge could properly conclude that defense counsel had made a tactical decision to put before the jury the nature of the parties' relationship in an attempt to show that the witness was a neutral and unbiased recounter of events.

Because the *voir dire* of the witness indicated that the direct examination would leave a misleading impression with the jury of their relationship, the judge could properly conclude that the government would be disadvantaged if it could not probe in some manner the nature of the relationship. Although such probing was potentially very prejudicial, the judge also could properly conclude that the defense had taken that risk and could not use the severance as a shield even where there was a change of circumstances. *See Jefferson, supra,* 463 A.2d at 685 (severance ruling should not be used as sword) (Nebeker, J.,

---

4. As we have noted, the judge granted the severance with the consent of the government, and since all parties apparently agreed that the drug evidence had potential for prejudice, the judge's later inquiry properly focused on a change of circumstances.

5. The judge stated:

I assumed defense counsel knew in light of the representations counsel made to me regarding the need for the witness to speak to a lawyer that the witness would relate information regarding the use of PCP, and I assumed counsel was aware of what allegedly transpired in reference to the witness and [appellant]. And with that knowledge counsel did put the witness on the stand. And it seems to me that under the circumstances that I've got to permit the Government to establish to

some degree the relationship between the parties to undermine the suggestion, the special suggestion made by defense counsel in bringing out pursuant to a direct question what the extent of the relationship was between, or is between the parties, and according to her, in response to a specific question, she said that they aren't close friends at all. That may or may not be true. But I think that the evidence indicating that they talked together and that they subsequently went to a location where he gave her some PCP, that they smoked together and got high, would tend to suggest that there is a closer relationship than she has suggested.

Defense counsel made no protest or dispute regarding the judge's assumptions about defense counsel's knowledge.

dissenting). The limited nature of the parties' relationship necessarily would lead to the disclosure of the post-offense drug gift and drug use to the jury. Defense counsel did not unknowingly venture into the area unaware of its risks. The judge, moreover, limited the scope of the cross-examination to eliminate questions about the sale of drugs, as not being probative of bias. *See Moreno, supra,* 482 A.2d at 1236; *see also Ford v. United States,* 549 A.2d 1124, 1127 (D.C.1988). Furthermore, after the cross-examination about the parties' relationship the judge immediately instructed the jury that the evidence of drug use was irrelevant to the charges against appellant and was to be used only to assess "the nature of the relationship" between the parties and "whether it would tend to suggest bias on [the witness'] part." *See Robinson, supra,* 174 U.S.App.D.C. at 230 & n. 10, 530 F.2d at 1082 & n. 10.

Accordingly, we hold that the trial judge did not abuse his discretion in permitting the government limited cross-examination of the witness to show bias, and we affirm the judgment.