Derrin A. PERKINS, Appellant,

v.

UNITED STATES, Appellee.

No. 94–CF–296.

District of Columbia Court of Appeals.

Argued May 10, 2000.

Decided Oct. 12, 2000.

John T. Moran, Washington, DC, appointed by this court, for appellant.

Florence Pan, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Roy W. McLeese III, and Demaurice Smith, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB, FARRELL, and RUIZ, Associate Judges.

SCHWELB, Associate Judge:

Derrin A. Perkins was convicted by a Superior Court jury of possession of cocaine with intent to distribute it (PWID). On appeal, he contends that the trial judge misapplied the doctrine of "curative admissibility" and erroneously admitted "bad acts" evidence that was substantially more prejudicial than probative. We conclude that the issue presented on appeal has not been adequately preserved and that Perkins has not shown plain error. Accordingly, we affirm.

## I.

### THE TRIAL COURT PROCEEDINGS

The government's evidence, if credited, established that on April 16, 1991, at approximately 1:30 a.m., officers of the Metropolitan Police Department stopped Perkins, who was driving a green Mercedes–Benz, for an illegal left turn. As one of the officers was writing a ticket, Perkins attempted to run away. Perkins slipped and fell, however, and the officers were quickly able to apprehend him.

While attempting to make his escape, Perkins reached into his waistband area and removed a brown paper bag. The police recovered the bag, and it was subsequently determined that the bag contained seventeen grams of crack cocaine with a street value of $3,300. The sum of $581 was recovered from Perkins. According to a police detective, Perkins stated that he had run because the drugs were on him.

Testifying in his own defense, Perkins denied the government's allegations. He disclaimed any knowledge of the drugs or of the bag in which they were contained. Perkins argued that it would have made no sense for him to attempt to run away when the officers had his driver's license and registration in their possession. He denied making any admissions to police, and he noted that he had entered a plea of not guilty at arraignment. Perkins acknowledged that cash in the approximate amount of $600 was recovered from him, but he claimed, and his girlfriend verified, that the girlfriend had given him the money to purchase a money order so that she could make a mortgage payment.

When his case came to trial in the Superior Court, Perkins not only denied his guilt of the PWID charge, but also claimed that the police had fabricated the allegation in order to coerce him into testifying for the government in a major federal drug conspiracy prosecution. The federal case involved a group of defendants who allegedly belonged to the "R Street crew." *See United States v. Thomas,* 324 U.S.App. D.C. 374, 114 F.3d 228, *cert. denied,* 522 U.S. 1033, 118 S.Ct. 635, 139 L.Ed.2d 614 (1997). Perkins was one of the defendants indicted in the R Street matter, and he was convicted by the jury of three federal felony charges.[1] On December 6, 1993, Perkins was sentenced to serve three concurrent life terms.[2]

During *in limine* proceedings in the PWID case in the Superior Court, Perkins sought to subpoena as a witness Assistant United States Attorney Russell Duncan, the prosecutor who had handled the R Street case. Perkins hoped to establish through Duncan's testimony that the PWID charge had been fabricated in order to pressure Perkins into assisting the government in its prosecution of the R Street crew. The judge ultimately ruled that Perkins' trial counsel had provided no factual basis for connecting the PWID charge to the R Street matter. The judge declined to require Mr. Duncan to testify, and she ordered that "the R Street incident is not to come into this trial." The judge went on to state that, subject to one possible limited exception,[3] she "expect[ed] absolutely no reference or testimony or discussion of the R Street case or Mr. Perkins' involvement in that." This ruling is not challenged on appeal.

In compliance with the judge's order, the attorneys did not elicit any information about the R Street case during the presentation of the prosecution's evidence or during Perkins' direct examination or cross-examination. While cross-examining Perkins, however, the prosecutor attempted to impeach him by showing that he had given false testimony in the R Street case regarding what had occurred at a meeting between Perkins and prosecutors on May 3, 1991, approximately two weeks after Perkins' arrest in the PWID case. Perkins had testified in the R Street matter that, at that meeting, he was shown a newspaper article entitled "D.C. Death Penalty Case Will be First in 35 Years." In the present case, the prosecutor pointed out that this article had appeared in the *Washington Post* of May 16, 1991, thirteen days after the meeting. Perkins indignantly insisted that the May 16 article was not the one he had been talking about during his R Street trial testimony, and he

1. Specifically, Perkins was found guilty of conspiracy to participate in a racketeer influenced corrupt organization (RICO), in violation of 18 U.S.C. § 1962(d); of conspiracy to distribute a controlled substance and to possess that substance with intent to distribute it, in violation of 21 U.S.C. §§ 841, 846; and of employment of juveniles to distribute a controlled substance, in violation of 18 U.S.C. § 848.

2. The indictment in the R Street matter had been returned on September 25, 1991, approximately five months after Perkins' arrest in the present case. Perkins' Superior Court trial took place in January 1994, shortly after he had been sentenced in the R Street case.

3. The judge recognized that Perkins could be impeached with his R Street convictions if he took the witness stand.

accused the prosecutor in the PWID case of "trying to switch the newspapers up and confuse me."

On redirect examination, Perkins' attorney followed up on the foregoing exchange by asking his client how the PWID case was discussed at the May 3, 1991 meeting. Perkins responded to this question by declaring that the PWID charge "was brought up as part of a bribe. This case was initiated for coercion." [4] This remark was in direct contravention of the trial judge's *in limine* ruling, and Perkins does not contend otherwise. At a bench conference following Perkins' comment, the prosecutor stated that Perkins had "opened the door" and that "what we plan to do now is [go] full throttle." The judge, adopting the prosecutor's emphatic phraseology, told defense counsel that "now that you have opened the door, [the prosecutor] can go into full throttle."

The prosecutor promptly demonstrated what he meant by going "full throttle." On recross-examination, his strategy was to try to establish, *inter alia*, that the government had no need to fabricate evidence against Perkins because the government had a powerful case against him and against the other R Street defendants. In conformity with this strategy, the prosecutor attempted to bring before the jury much of the evidence that had been presented at the federal trial against the R Street defendants (including Perkins). Specifically, the prosecutor began to interrogate Perkins regarding the testimony given by various government witnesses at the federal trial. Perkins' attorney objected that "this is getting way out of the context of the direct examination" and that "it is just retrying the [R Street] case." The judge disagreed:

> THE COURT: It is impeachment, I ordered you not to do it against my directions and you went ahead and brought it out. Now your whole theory of the defense[,] that your client has directed you to put on contrary to the [c]ourt's ruling[, is] that the R Street investigation was trying to secure his cooperation and that there is a set-up to get his cooperation.
>
> And it would seem to me to make sense [to permit the government to show that] they didn't need this charge to get his cooperation, doesn't it?
>
> DEFENSE COUNSEL: That's his theory.
>
> THE COURT: The objection is overruled.

After the questioning resumed, Perkins denied that the testimony of some of the R Street prosecution witnesses was unfavorable to him and to his codefendants, and he again accused the prosecutor of fabrication. The government ultimately introduced into evidence relevant transcripts from the federal trial.[5] During the prosecution's rebuttal case, an FBI agent also described some of the testimony at the R Street trial. The agent further testified that he had interviewed Perkins in connection with the R Street prosecution, and that Perkins had denied being a member

---

4. Both before and after the quoted comment, Perkins made numerous additional provocative statements which were unresponsive to the questions propounded to him. He told the prosecutor, *inter alia*, that "you['re] just blowing smoke right now"; that "you['re] kind of sneaky"; that "you people don't fool no one but yourself"; and that, "this is staged and you know it." In comments apparently directed to the judge, Perkins stated, "see, I ain't gonna get no justice here"; and "[d]on't let them get away with this." Perkins also asserted that he had been sentenced to life imprisonment in the R Street case "for

nothing." When the prosecutor objected, Perkins responded, "You want to hide that, don't you?" Perkins, whom the record shows to be intelligent and articulate, made all of these remarks in the presence of the jury.

5. At that stage, his earlier objection having been overruled, Perkins' attorney asked only that the transcripts be redacted to eliminate irrelevant matters. Later, defense counsel stated: "I think that the proper way to get the evidence in would be with the transcript."

of the R Street crew. According to the agent, however, Perkins told him that

> when he was a young man in high school ... he had sold marijuana with [the R Street crew] on the street and ... he had, since that time, because of the treacherousness of that group, was very concerned and careful about being involved with them in any kind of narcotics activity.
>
> He said that he sold small amounts of crack cocaine that he got from three different sources and that he did this only as pocket money selling around the streets in the neighborhood.
>
> He also indicated that he had no one working for him and he told me ... that he would not give me the names of the three people who supplied him the crack cocaine until he had a chance to discuss that further with some other people.

The jury in Perkins' Superior Court case—one in which he was accused of PWID—thus learned not only that Perkins had been convicted of major charges in a federal drug conspiracy case, but also that he had admitted engaging in the sale of cocaine and marijuana in the past and was unwilling to identify his suppliers.[6]

The trial judge instructed the jury that the R Street evidence was to be considered "only with respect to the issue of credibility and to rebut Mr. Perkins' defense that this case was a fabrication in order to gain his cooperation with the R Street case." The jury found Perkins guilty as charged.

## II.

## LEGAL DISCUSSION

■ It appears to be undisputed that the prosecution would not have been entitled to introduce evidence of Perkins' drug involvement and of criminal acts not charged in the Superior Court case if Perkins had not "opened the door" to its reception. *See Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964). By disregarding the trial judge's orders, and by accusing the police in open court of coercion and bribery, however, Perkins opened the door to the reception of otherwise inadmissible evidence to the extent reasonably necessary to permit the government to respond to Perkins' charges. But according to Perkins, the extensive evidence admitted by the court of Perkins' other bad acts was unduly prejudicial, diverted the jury's focus from the issue at hand, and denied Perkins a fair trial. Distilled to its essence, Perkins' claim on this appeal is that the judge allowed the door to be opened too wide, and that the evidence of other crimes that came through the door effectively impaired the presumption of innocence, *see Thompson v. United States*, 546 A.2d 414, 419 (D.C.1988), and deprived him of the right to be tried for the charged offense alone.

### A. *The standard of review.*

■ Before addressing the merits of Perkins' position, we must identify the scope of our review. In general, determinations regarding the admissibility of evidence are confided to the trial court's sound discretion. *See, e.g., Street v. United States*, 602 A.2d 141, 143–44 (D.C.1992). The government contends, however, that Perkins did not preserve in the trial court the contention he now presents on appeal. Specifically, says the government,

> [a]lthough [Perkins] objected to one line of questioning about the R Street case on the grounds that the questioning was irrelevant and beyond the scope of his direct testimony, he made no general objection in the trial court to the introduction of evidence of the R Street prosecution, and never contended that such evidence was more prejudicial than probative.

We are constrained to agree with the government. Perkins' attorney did object, as we have seen, to the questioning of his client regarding the R Street case, but not

---

6. Perkins testified, however, that he never made these admissions.

on the ground that he now espouses. His first ground of objection—that the proposed line of inquiry was "out of the context of the direct examination"—was unpersuasive under these circumstances, and Perkins does not press it on appeal.[7] The second basis for objection—that the government was attempting to "retry" the R Street case—was less than lucid as to counsel's theory. The trial judge evidently believed that counsel was challenging the relevance of the evidence sought to be elicited, and she overruled the objection on the ground that the inquiry was relevant to Perkins' allegations of a set-up by the police. If the judge misunderstood counsel, and if the defense objection was in fact based on a different claim, namely, that the evidence was more prejudicial than probative and ought not to be received under a "curative admissibility" theory, then Perkins' attorney had the opportunity to make his position clear to the judge. But counsel appeared to accept the judge's ruling, as well as her interpretation of his objection. The defense never objected thereafter to any of the R Street evidence, or to the FBI agent's testimony regarding Perkins' admissions of drug trafficking, and counsel never claimed that any individual item of evidence sought to be elicited, or the evidence in its entirety, was more prejudicial than probative.

 In this case, as in *Hunter v. United States*, 606 A.2d 139, 144 (D.C.), *cert. denied,* 506 U.S. 991, 113 S.Ct. 509, 121 L.Ed.2d 444 (1992),

[w]e conclude that the plain error standard applies. Objections must be made with reasonable specificity; the judge must be fairly apprised as to the question on which he is being asked to rule. Points not asserted with sufficient precision to indicate distinctly the party's thesis will normally be spurned on appeal. The purpose of requiring a specific objection is to enable the prosecution to respond to any contentions raised and to make it possible for the trial judge to correct the situation without jettisoning the trial.

(Citation and internal quotation marks and brackets omitted.) The defense never having claimed that the prejudicial effect of the evidence outweighed its probative value, the prosecutor never had the opportunity to state his views on the matter, and the judge had no occasion to consider whether there were other, less prejudicial means by which the government could respond to Perkins' accusations.[8]

 Under the "plain error" standard, Perkins has the "formidable burden," *id.,* of showing that the trial court's error was "plain" or "obvious," *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), and that the error resulted in a clear miscarriage of justice. *Id.; see also Harris v. United States,* 602 A.2d 154, 159 (D.C. 1992) (en banc). Reversals for plain error are confined to situations which can fairly be characterized as "particularly egregious." *Hunter, supra,* 606 A.2d at 146 (citations omitted).[9]

7. The objection came during recross-examination, and Perkins' counsel presumably meant to say "redirect" rather than "direct." In any event, Perkins having asserted on redirect examination that the police had tried to coerce and bribe him, the prosecution was entitled to try to establish, on recross, that the police had no reason or motive to engage in such chicanery.

8. We note that the government could, and did, emphasize that the officers who arrested Perkins for PWID had no connection with the R Street case. The prosecutor also pointed out that the R Street defendants were convict-

ed, so that the evidence presented was sufficiently strong to enable the government to prevail without Perkins' favorable testimony. The defense might plausibly have argued that since the R Street jury had found Perkins and his codefendants guilty beyond a reasonable doubt, and since the Superior Court jury had been so informed, it was unnecessary to disclose the testimony that led to the R Street convictions. This contention, however, was not presented to the judge.

9. We recognize that although claims not presented in the trial court will not be considered, "parties are not limited to the precise

Perkins nevertheless contends on appeal that his conviction must be reversed "under any standard of review." We therefore consider his contentions, as we must, under the "plain error" standard.

## B. *Curative admissibility.*

 "Under the doctrine of curative admissibility, the introduction of incompetent or irrelevant evidence by a party opens the door to the admission of otherwise inadmissible evidence only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence." *Lampkins v. United States,* 515 A.2d 428, 430 (D.C. 1986) (citation and internal quotation marks omitted). The doctrine is based upon, and limited by, "the necessity of removing prejudice in the interest of fairness." *Crawford v. United States,* 91 U.S.App.D.C. 234, 237, 198 F.2d 976, 979 (1952). "Introduction of otherwise inadmissible evidence under shield of this doctrine is permitted only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence." *Jenkins v. United States,* 374 A.2d 581, 585–86 (D.C.), *cert. denied,* 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 182 (1977) (citation and internal quotation marks omitted). "It is the trial court's function to exclude evidence that would ... distract the attention of the jury from the primary to the collateral issues." *Smith v. Executive Club, Ltd.,* 458 A.2d 32, 41 (D.C.1983). We recently stated in *Mercer v. United States,* 724 A.2d 1176, 1192 (D.C.1999) that

> [t]he doctrine is to prevent prejudice and is not to be subverted into a rule for injection of prejudice.... Opening the door is one thing. But what comes

through the door is another. Everything cannot come through the door. (Citations omitted.)

In the present case, the approach to "curative admissibility" urged by the prosecutor and apparently adopted by the trial judge is not easy to reconcile with the cautious and balanced treatment of the doctrine in the authorities that we have cited. The words "full throttle" do not suggest restraint. On the contrary, they seem to be equivalent to "full speed ahead with everything we've got." Thus, in a trial in which the question was whether Perkins possessed drugs for sale, the government adduced the record of the R Street case, as well as Perkins' admissions to an FBI agent that he had trafficked in cocaine and marijuana but would not identify his suppliers. This could not have been helpful to Perkins.

This is not to say, however, that the evidence was irrelevant. Perkins' assertion that the police had engaged in fabrication, bribery and coercion implicated the question whether the police had any reason to resort to such measures in order to make their case against the R Street crew. If the prosecutors had compelling evidence against the R Street defendants even without favorable testimony from Perkins, they would have had little or no motive to engage in such dishonorable and unlawful methods. We have held that "[e]vidence of a lack of motive is quintessentially exculpatory," *Martin v. United States,* 606 A.2d 120, 128 (D.C.1991), and this reasoning logically applies as readily where allegations of official misconduct are at issue as it does where private citizens are alleged to have transgressed.

 Under these circumstances, we conclude that the trial judge's admission of

---

arguments they made below." *Yee v. City of Escondido,* 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992). *Yee* provides no solace for Perkins, however, for in the trial court, he never asserted any claim that the challenged evidence was more prejudicial than probative. In fact, there is no meaning-

ful resemblance between his position in the trial court and the claim that he presents to us. This is not a case in which a party presented the same general theme in both courts and then added additional arguments on appeal in support of the same theme.

the FBI agent's testimony and of the other evidence now complained of was not plain error. We so conclude notwithstanding our view that the judge allowed the prosecutor to put on a case which largely ignored the constraints which have been carefully built into the doctrine of curative admissibility. Indeed, any fair-minded reader of the transcript in this case would find it difficult to avoid the impression that, notwithstanding the judge's limiting instruction, the full-dress reprise of the R Street record tended to dwarf the relatively simple evidence regarding the events of April 16, 1991—the date on which the offense for which Perkins was on trial was alleged to have occurred. Although the first prong of the "plain error" standard is a demanding one—the defendant must show, as we have noted, that the challenged ruling was "obviously" wrong—it is not at all clear that Perkins has failed to satisfy that prong.[10]

But even if we assume, without deciding, that the admission of the R Street evidence was "obviously wrong," Perkins has failed to demonstrate that a miscarriage of justice occurred, or that the error was "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc). The jury's verdict was consistent with the evidence at trial. Indeed, aside from a general denial, Perkins' only proffered defense to the PWID charge was that the police fabricated this case in order to enlist Perkins' assistance in the R Street prosecution. The existence of any police motive

to fabricate was effectively demolished by the proof that the government did not need his testimony to prevail in the R Street case. Although Perkins challenged the plausibility of the officers' account, the jury was certainly free to accept their testimony and to reject that of Perkins. In addition, the judge instructed the jury quite specifically that the R Street evidence was being admitted for strictly limited purposes.

Finally, we are constrained to note that this is a case in which the defendant largely brought about the situation of which he is now complaining. Perkins acknowledged that he wanted very much to voice his accusations against the police. His disregard of the judge's *in limine* ruling was plainly deliberate. Moreover, the record is replete with inappropriate comments on his part—comments that were evidently designed to place before the jury denunciations of the police and prosecutors and other personal opinions which were not admissible under the rules of evidence. Having insisted on trying the case on a kind of "anything goes" theory, and having stated in effect that revisitation by both sides of the issues in the R Street case is "what we want," there is a certain hollowness in Perkins' claim that a miscarriage of justice occurred when the case was tried as he had wanted it to be.

We reiterate that the correct application of our curative admissibility jurisprudence contemplates greater restraint than was shown here under the prosecution's "full throttle" approach. We also recognize

---

**10.** We note, on the other hand, that the admission of the R Street evidence was not altogether indefensible. Proof that the police lacked a motive to fabricate was one rational means (though not the only means) of countering Perkins' allegations of wrongdoing. Establishing the strength of the government's evidence in the R Street litigation was a reasonable way to show lack of motive. The evidence now being challenged thus had at least some probative value, and it could properly be excluded only if that probative value was substantially outweighed by the prejudicial effect of the evidence. *See Johnson v.*

*United States,* 683 A.2d 1087, 1090 (D.C.1996) (en banc), *cert. denied,* 520 U.S. 1148, 117 S.Ct. 1323, 137 L.Ed.2d 484 (1997).

The problem in this case, however, is that, so far as the record reflects, the trial judge never undertook the critical task of balancing probative value against prejudicial effect. Instead, she apparently elected to permit the prosecutor to go "full throttle." The balancing prescribed by *Johnson* is especially important where, as here, we are dealing with "other crimes" evidence similar to the conduct at issue in the charged offense. *Id.* at 1098.

that some of the otherwise inadmissible "other crimes" material presented to the jury was potentially quite prejudicial. Nevertheless, we conclude that this record does not present the kind of extreme situation which would warrant reversal on a ground not properly preserved in the trial court.

## III.

## CONCLUSION

For the foregoing reasons, Perkins' conviction is hereby

*Affirmed.*