**Oliver T. GOINES, Appellant**

v.

**UNITED STATES, Appellee.**

No. 03–CM–883.

District of Columbia Court of Appeals.

Argued Oct. 19, 2004.

Decided Aug. 24, 2006.

Eve Hanan, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Keri S. Barta, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and John J. Manning, Assistant United States Attorney, were on the brief, for appellee.

Before RUIZ and GLICKMAN, Associate Judges, and TERRY, Senior Judge.*

TERRY, Senior Judge:

After a non-jury trial, appellant was convicted of malicious destruction of property. His only contention on appeal is that the trial court erroneously admitted evidence of two prior assaults on the complaining witness, who was his former girl friend. We conclude that the trial court erred, but that the error was harmless; accordingly, we affirm the conviction.

I

Lena Mobley testified that on October 23, 2000, she was in her home on N Street, Northwest, when she heard knocking at the door. When she asked who was knocking, a voice replied, "Oliver." Ms. Mobley looked through the peephole in the door and recognized appellant, with whom she had previously had a romantic relationship.[1] She told him to go away, but he continued knocking. Ms. Mobley ignored the knocking and went upstairs to her bedroom.

A few minutes later, Ms. Mobley heard a crashing sound in the basement, and then someone knocked on her bedroom door. It was appellant, who kept saying, "Open the door, open the door." When the knocking continued for "five or ten minutes," Ms. Mobley called the police. Soon thereafter Ms. Mobley heard footsteps retreating down the stairs and out the front door. After appellant left, Ms. Mobley went down to the basement to see what had happened. She discovered that a window had been "pushed out and broken." She estimated the damage at $75 to $100, but that was only her personal guess, since at the time of trial she had not yet had the window repaired.[2]

Appellant denied being at Ms. Mobley's house on October 23. He said that the house had been abandoned before Ms. Mobley moved back into it in 2000,[3] and that "a lot of drug addicts were using [it] to do their thing. . . ."[4] He also stated that the house had "gates torn out, steps broken, [and] doors lopsided," though he did not know whether the basement window was broken prior to October 23.

---

* Judge Terry was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on February 1, 2006.

1. Appellant and Ms. Mobley had at one time lived together in a house on Ninth Street, Northwest, for about two years.

2. There is some dispute as to the extent of the damage. It appears from the record that the window itself, which was made of plexiglass, was not actually broken but was merely detached from its frame.

3. The house had been vacant for approximately two years, from 1998 to 2000, before Ms. Mobley began living there again.

4. Ms. Mobley confirmed on cross-examination that someone had broken into the house during the period when it was vacant.

On cross-examination of Ms. Mobley, defense counsel tried to elicit testimony about rent money which Ms. Mobley allegedly owed to appellant and about the couple's eventual eviction from a previous apartment. The defense theory was that Ms. Mobley fabricated the instant charges against appellant as a result of their disagreement over whether she owed him money. However, when counsel sought to show that Ms. Mobley was biased against appellant because of this dispute, which ultimately ended in the couple's separation, Ms. Mobley testified that the relationship had not ended over money, but that they had broken up because appellant was "violent toward [her]." Although defense counsel tried to focus the testimony on whether there was, in fact, a dispute over money, Ms. Mobley repeatedly made references to appellant's prior acts of violence. Defense counsel objected each time to Ms. Mobley's "non-responsive" answers.

On redirect examination, the court allowed the government, over defense objection, to question Ms. Mobley about the prior incidents of violence to which she had referred on cross-examination. The court said:

> I will allow the Government some leeway in rebutting the claim that she is biased because of the 1000 dollars and that she's bitter because they broke up over the money, and she says when they broke up, it wasn't because of the money. But the government will be limited in the number of prior incidents and the details of prior incidents that it goes into with the complaining witness.

Ms. Mobley then testified that appellant "beat [her] up at [her] job," "tried to choke [her]" in their apartment when two friends were present, and "came up to [her] girl

friend's house and beat [her] up over there."[5] She could not recall, however, exactly when these incidents occurred.

The trial court found appellant guilty of malicious destruction of property. The court accepted Ms. Mobley's version of events as credible, noting that Ms. Mobley testified she did not want appellant to go to jail, but simply "wanted her money back for the broken window." By contrast, the court said that appellant had "questionable credibility," given his prior impeachable convictions and the fact that he flatly denied ever having been at Ms. Mobley's house on the night of October 23. After remarking that both parties agreed the relationship between Ms. Mobley and appellant had ended badly, the court rejected the defense theory of bias, stating that Ms. Mobley would not have called the police to report that appellant had broken into her house "months after their breakup for just no good reason."

## II

Appellant contends that the court erred when it admitted evidence of his prior acts of violence after ruling that defense counsel had "opened the door" to that line of questioning. Specifically, he maintains that the court failed to apply properly the doctrine of curative admissibility and the requirements of *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).

▮ A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *See, e.g., Mercer v. United States,* 724 A.2d 1176, 1182 (D.C.1999). In a situation such as the one presented in this case, where the substance of the redirect examination is at issue, "[t]he scope of redirect ... rests within the sound discre-

---

5. Ms. Mobley's testimony about this last incident was stricken because it contained similarities to the crime charged in this case, namely, that appellant went to Ms. Mobley's friend's apartment and was banging and knocking on the door.

tion of the trial court and [its ruling] will not be reversed absent a clear showing of abuse." *Carpenter v. United States*, 635 A.2d 1289, 1293 (D.C.1993).

■■■ In general, "evidence of one crime is inadmissible to prove disposition to commit crime, from which the [factfinder] may infer that the defendant committed the crime charged." *Drew*, 118 U.S.App.D.C. at 15, 331 F.2d at 89. Because the admission of such evidence is presumed to have a prejudicial effect on the defendant, it is excluded unless there is some "substantial, legitimate purpose" for admitting it. *Id.* at 16, 331 F.2d at 90. The *Drew* court listed several instances of such "legitimate purposes." For example, "evidence of other crimes is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other, and (5) the identity of the person charged with the commission of the crime on trial." *Id.*[6] Quite apart from *Drew*, such evidence may come in under the doctrine of "curative admissibility." We have summarized that doctrine in cases such as *Lampkins v. United States*, 515 A.2d 428 (D.C.1986), where we said that "the introduction of incompetent or irrelevant evidence by a party opens the door to the admission of otherwise inadmissible evidence," but "only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evi-

dence." *Id.* at 430; *see Perkins v. United States*, 760 A.2d 604, 610 (D.C.2000), quoting *Lampkins* and other cases. It is the latter doctrine with which we are here concerned.[7]

In this case, the trial court ruled that the defense "opened the door" to the admission of evidence of appellant's prior acts of violence during its line of questioning about Ms. Mobley's alleged bias towards appellant. For this reason, the government was allowed to elicit testimony from Ms. Mobley on redirect examination about incidents of violence between her and appellant in order to rebut the defense claim that Ms. Mobley was biased against him. Appellant now claims that the trial court improperly applied the doctrine of curative admissibility in deciding to allow Ms. Mobley so to testify.

■■■ The purpose of the doctrine of curative admissibility is to "remove any unfair prejudice which might otherwise have ensued from the original evidence." *United States v. Winston*, 145 U.S.App. D.C. 67, 71, 447 F.2d 1236, 1240 (1971) (citation omitted), quoted with approval in *Mercer*, 724 A.2d at 1192. But it must be applied with caution. *See United States v. McClain*, 142 U.S.App.D.C. 213, 216, 440 F.2d 241, 244 (1971) ("[t]he doctrine of curative admissibility is one dangerously prone to overuse"). This court has admonished that the doctrine "should not be used unfairly to prejudice the defendant." *Mercer*, 724 A.2d at 1192. As the trial judge said in the *Winston* case, "opening the door is one thing. But what comes

---

**6.** This list is not exhaustive, but it does encompass the major exceptions. *Drew*, 118 U.S.App.D.C. at 16 n. 10, 331 F.2d at 90 n. 10; *see, e.g., Williams v. United States*, 549 A.2d 328, 332 (D.C.1988).

**7.** The trial court specifically stated that it was limiting the government's line of questioning to "rebutting the claim that [Ms. Mobley] is

biased because of the 1000 dollars and that she's bitter because they broke up over the money, and she says when they broke up, it wasn't because of the money." Thus it was not admitted as "other crimes" evidence and does not fall within the ambit of *Drew. See Samuels v. United States*, 605 A.2d 596, 597 (D.C.1992).

through the door is another. Everything cannot come through the door." 145 U.S.App.D.C. at 71, 447 F.2d at 1240. On the record before us, we are not persuaded that any "unfair prejudice" was injected by defense counsel's cross-examination of Ms. Mobley. Counsel merely sought to establish that Ms. Mobley was biased against appellant because of a monetary dispute. Ms. Mobley denied this, explaining that she did not owe appellant any money and, moreover, that the real reason for their breakup was that appellant had been violent towards her.

Any prejudice to the government that might have resulted from defense counsel's suggestion that Ms. Mobley fabricated the charges against appellant because of a disagreement over money was essentially nullified by Ms. Mobley's emphatic and repeated assertions during cross-examination that this was not the case. Her elaboration during redirect examination on *why* this was not the case was therefore unnecessary, and the trial court should not have allowed it. Permitting the government to introduce further evidence of appellant's prior acts of violence served only to prejudice appellant, not to cure any prejudice injected by the defense through the introduction of incompetent or irrelevant evidence.

■ Moreover, even if the defense did open the door to the admission of such evidence, the trial court was required to determine "if its probative value [was] substantially outweighed by the danger of unfair prejudice." *Mercer,* 724 A.2d at 1184; *see Busey v. United States,* 747 A.2d 1153, 1165 (D.C.2000). The probative value of the evidence at issue here was minimal at best. The court allowed it to come in for the purpose of rebutting the defense's suggestion that Ms. Mobley was biased. However, instead of being offered to cure "a misleading impression" created by the

defense, *Kinard v. United States,* 635 A.2d 1297, 1306 n. 17 (D.C.1993), it merely *confirmed* that Ms. Mobley did, in fact, harbor some sort of hostility against appellant. The source of that hostility was irrelevant, and a more accurate understanding of it was unnecessary to the ultimate disposition of the case.

The present case is somewhat similar to *Perkins, supra,* in which the defendant argued that police fabricated the case against him in order to enlist his assistance in a separate prosecution in which the defendant was a potential witness. At a pretrial hearing, the judge directed that "the [other] incident is not to come into this trial." 706 A.2d at 606. The defendant, in direct contravention of that ruling, declared on the stand that the case being tried "was initiated for coercion." *Id.* at 607. The judge then ruled that the defendant's statement had "opened the door" and allowed the government to establish, on recross-examination, that "the police had no reason or motive to engage in such chicanery." *Id.* at 609 n. 7.

■ No such situation exists in this case. Like the defendant in *Perkins,* appellant asserted, through his cross-examination of Ms. Mobley, that the case against him was fabricated. But even if defense counsel's questioning opened the door to further testimony rebutting that implication, the evidence offered by the government was not offered for the purpose of establishing that Ms. Mobley had "no reason or motive" to fabricate the charges, and was not probative in that regard. Indeed, appellant suggests that the government had no intention of curing a misleading impression made by the defense as to whether Ms. Mobley was biased, but simply used the court's ruling as an opportunity to bring in additional evidence of appellant's motive to break into Ms. Mobley's

house [8] Although we do not go so far as to question the good faith of the prosecutor, we agree that it was error for the court to allow additional examination of the witness about prior acts of violence whose probative value on the issue of bias was substantially outweighed by their prejudicial effect.

■■■■■ But our inquiry does not end here. We must determine, in addition, "whether the error below was reversible, and thereby an abuse of discretion." *Mercer*, 724 A.2d at 1194. In doing so, we must look at the "totality of the circumstances" and decide whether we can say, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Only if the error "jeopardized the fairness of the proceeding as a whole," or had a "substantial impact upon the outcome" of the case, may we reverse the judgment. *Johnson v. United States*, 398 A.2d 354, 366 (D.C.1979). Applying this standard, we conclude that the error was harmless.

■■■■ As the government points out, the only mention that the judge made of appellant's alleged prior acts of violence when she issued her verdict was as follows:

> Both parties agree that the relationship ended badly. Mr. Goines' theory that the relationship ended because the complaining witness owed him money. The complaining witness testified that, to the contrary, he would have owed her

money and that the relationship ended because of his violent behavior that led to their break-up.

The judge went on to reject the defense theory of bias resulting from a dispute over money, choosing instead to believe that Ms. Mobley would not have called the police out of mere bias against the defendant but, rather, because there was actually a disturbance at her house that resulted in a broken window. It is unlikely, even if the government had not been allowed to "rebut" appellant's assertion that Ms. Mobley was biased, that the judge would have accepted appellant's theory, since she clearly believed Ms. Mobley had a concrete reason to call the police. Thus we are satisfied that it was harmless error to allow the government, under a theory of curative admissibility, to question the witness on redirect about appellant's prior acts of violence.

Appellant further contends that he cannot be charged with opening the door because, if the government had not "implicitly assured" defense counsel that it would not be introducing "other crimes" evidence, counsel "would not have sought to use the bias defense" when questioning Ms. Mobley. In essence, appellant asserts that, because the government did not tell him before trial that it planned to introduce "other crimes" evidence, it should not be allowed to reap the benefits of defense counsel's inadvertent introduction of that evidence on cross-examination of the complaining witness. It is clear from the record, however, that the government did not plan at the outset to introduce the evidence. The prosecutor did not ask Ms.

---

8. In arguing that the defense opened the door to this line of questioning, the prosecutor said, "She testified on cross-examination as to why they broke up. I think it goes to the defendant's motive and intent in this case in going to her house a few months later." In his closing argument, the prosecutor once again referred to the testimony about prior acts of violence, saying, "There is evidence in the record that the defendant had some physical altercations in which he beat the complaining witness on occasions prior to the breakup, and I believe that that goes to the defendant's motive for going into the house."

Mobley on direct examination about any prior acts of violence committed by appellant. That evidence came in only on redirect, after defense counsel had questioned Ms. Mobley on cross-examination about the couple's relationship. Thus the government had no obligation to inform the defense that it intended to offer such evidence on redirect.

Finally, appellant maintains that, because the government purportedly offered the evidence to prove motive and intent, the trial court should have conducted a *Drew*-type analysis of this "other crimes" evidence, which would have required a determination of whether there was clear and convincing evidence that the alleged crimes occurred, and whether the introduction of the evidence was more probative than prejudicial. *See, e.g., Roper v. United States,* 564 A.2d 726, 731 (D.C. 1989). This contention is without merit.

■ Even if the government's sole purpose was to use the evidence of appellant's prior acts of violence to prove his motive and intent to break into Ms. Mobley's house, rather than to rebut the defense assertion that Ms. Mobley was biased, defense counsel failed to object to the government's statements to that effect. Thus we will not review the trial court's failure to conduct a *Drew* analysis for abuse of discretion, but only for plain error, *see Perkins,* 760 A.2d at 608–609, and we find none.

■ "Under the plain error standard, 'the error must be: (1) obvious or readily apparent, and clear under current law; and (2) so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial.'" *Coates v. United States,* 705 A.2d 1100, 1104 (D.C.1998) (citations omitted). As we have already concluded, the court's verdict does not appear to have been swayed by the introduction of evidence of appellant's prior violence towards Ms. Mobley. Consequently, it cannot be said that the failure to conduct a *Drew* analysis was "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." We hold, therefore, that there was no plain error.

Appellant's conviction is

*Affirmed.*