*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-CM-0051

PIERRE WILLIAMS, APPELLANT

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2019 CMD 10257)

Hon. Michael L. Rankin, Trial Judge

(Submitted June 1, 2021                    Decided September 29, 2022)

*Sicilia C. Englert* was on the brief for appellant.

*Channing D. Phillips*, Acting United States Attorney, and *Elizabeth Trosman*, *Erin M. DeRiso*, and *Ethan L. Carroll*, Assistant United States Attorneys, were on the brief for appellee.

Before EASTERLY and DEAHL, *Associate Judges*, and THOMPSON,* *Senior Judge*.

---

* Senior Judge Thompson was an Associate Judge of the court at the time of submission. On October 4, 2021, she was appointed as a Senior Judge but she continued to serve as an Associate Judge until February 17, 2022. *See* D.C. Code § 11-1502 & 1504(b)(3). On February 18, 2022, she began her service as a Senior Judge. *See* D.C. Code § 11-1504.

Opinion for the court by *Associate Judge* EASTERLY.

Opinion by *Senior Judge* THOMPSON, dissenting in part, at page 7.

EASTERLY, *Associate Judge*: Pierre Williams (whose true name is apparently Eric Ross Williams) seeks reversal of his convictions for unlawful possession of drug paraphernalia, D.C. Code § 48-1103(a)(1), and unlawful possession of a controlled substance, D.C. Code § 48-904.01(d)(1).[1] He argues that the trial court erred in denying his motion to suppress (1) statements he made to police without the benefit of *Miranda* warnings, (2) purported drug paraphernalia (a glass "stem" and a rolled up dollar bill) found during a warrantless search of his car, and (3) crack cocaine found in his sock during a subsequent search of his person. We review the court's factual findings for clear error and its legal rulings de novo. *In re D.M.*, 94 A.3d 760, 764 (D.C. 2014). Based on the arguments briefed to the court, we vacate in part and affirm in part.

We turn first to Mr. Williams's argument that the trial court erred in denying his motion to suppress his incriminating statements, which the police elicited without Mirandizing him. In issuing its ruling, the court correctly acknowledged that, after the police stopped Mr. Williams for driving a car with stolen license plates, removed

---

[1] Mr. Williams was also convicted of operating a motor vehicle without a permit, D.C. Code § 50-1401.01(d), but raises no challenge to that conviction.

him from his car, surrounded, searched, and handcuffed him, "he was clearly detained [and] had no liberty to go anywhere." But while acknowledging that Mr. Williams had clearly been seized for Fourth Amendment purposes, the court appeared to conclude that neither "the level of custody" nor the "public safety" nature of the questions the officers posed to Mr. Williams implicated *Miranda*. We cannot agree.

Although the Fourth and Fifth Amendment inquiries are distinct, *Miranda* does not require a greater degree of restraint than formal arrest, *see Berkemer v. McCarty*, 468 U.S. 420, 441 (1984) (defining custody for *Miranda* purposes as "comparable to [the level of restraint] associated with a formal arrest"), and a person in Mr. Williams's situation would not have felt they were "at liberty to terminate the interrogation and leave," *see White v. United States*, 68 A.3d 271, 276 (D.C. 2013) (internal quotation marks omitted) (identifying this as the relevant inquiry for assessing *Miranda* custody). Moreover, in that custodial situation, when the police asked Mr. Williams an investigatory question about the presence of contraband in his car that they reasonably should have known was likely to elicit an incriminating response,[2] the standard for *Miranda* interrogation was squarely met. *See Rhode*

---

[2] The police asked Mr. Williams, "Anything in the car we need to know about? Drugs, guns, anything of that sort?"

*Island v. Innis*, 446 U.S. 291, 301 (1980); *accord Jones v. United States*, 779 A.2d 277, 282-83 (D.C. 2001) (en banc).  We therefore hold that the trial court erred in denying Mr. Williams's motion to suppress his un-Mirandized statements.

Mr. Williams also challenges the admission of the stem and the dollar bill found in his car after he was taken into *Miranda* custody.  The court concluded that these objects were in plain view, *see Umanzor v. United States*, 803 A.2d 983, 998-99 (D.C. 2002) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)), in the absence of any testimony to that effect.  (The court observed that the police took a photograph of the objects on full display on the passenger seat, and "usually, that's done to show defense or prosecution where something is when [the police] see it.")  On appeal, the government acknowledges that the body-worn camera footage shows that the stem and the dollar bill were not in plain view when the police approached the car and that an officer had to go into the car and unfold a piece of cloth on the front seat to make them visible.  We conclude that the trial court's factual finding that the stem and dollar bill were visible from outside the car was without adequate foundation and that its conclusion that the seizure of these items was justified under the plain view doctrine was in error.

The government urges us to uphold the seizure of the stem and rolled up dollar bill on different grounds, asserting that the police had probable cause to search Mr. Williams's car.[3] Specifically, the government suggests that, under *United States v. Patane*, 542 U.S. 630 (2004), any *Miranda* violation would not require the suppression of any resulting physical fruits, and that Mr. Williams's un-Mirandized statements could establish probable cause for the search of the car. As it effectively concedes, the government did not advance this theory before the trial court.[4] We

___

[3] At trial, the government argued that the stem and dollar bill were separately admissible under the doctrine of inevitable discovery because, once the police lawfully discovered the drugs on Mr. Williams's person (in his sock, see *infra* discussion of the conviction for possession of a controlled substance), they would have had a basis to search his car for drugs as well. However, the government abandons this theory on appeal.

[4] The government argues we should address this unpreserved *Patane*-based probable cause argument for the first time on appeal because, it asserts, addressing a purely legal question would not be procedurally unfair. Effectively, the government appears to be asking this court to relieve it of its burden to justify the legality of searches and seizures in the trial court. We decline to do so.

Even though the government does not argue that it preserved a probable cause argument, the dissent identifies places in the trial record where it perceives this argument to have been made. In particular, the dissent highlights a sentence in the government's opposition to Mr. Williams's motion to suppress where the government argued that the court should recognize an "officer safety" exception to *Miranda*, and then asserted that Mr. Williams had made an "admission *in response to an officer safety question*" to which *Miranda*'s requirements did not apply (emphasis added). The novelty of this reasoning aside, this one sentence cannot reasonably be said to have raised an argument that a statement obtained *in violation* of *Miranda* can alone provide probable cause for a subsequent search of Mr. Williams's car. And there is no indication in the record from the evidentiary hearing that the trial court, or either of the parties, understood the government to be making

therefore decline to consider whether the search of Mr. Williams's car was lawful on this basis.[5] *See Robinson v. United States*, 76 A.3d 329, 341 n.24 (D.C. 2013) (concluding that the government "forfeited its opportunity to defend its seizure and search of [the defendant] based on [a] new theory" not litigated in the trial court).

Without Mr. Williams's statements regarding his possession of drug paraphernalia or the items themselves, his conviction for possession of drug paraphernalia lacks any evidentiary foundation and must be vacated. The same, however, cannot be said of his conviction for drug possession. That conviction is based on the drugs found on Mr. Williams's person, which the court concluded were

---

that argument. Rather, the government (unsuccessfully) argued the stem and the dollar bill would have been inevitably discovered based on the later search of Mr. Williams's person, see *supra* note 3, thereby seeming to concede that the search required some basis outside of Mr. Williams's un-Mirandized statements regarding the contents of his car.

[5] The dissent correctly notes that "parties are not limited to the precise arguments they made below," as long as the overarching claim was properly presented before the trial court. *Post* at 9 (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992)). But, setting aside that the government has not made a *Yee*-based argument, to say that the government presented a "claim" under *Patane* to the trial court would be to consider a "claim" at such a level of abstraction that the term would lose all meaning. We would effectively be saying that the government could preserve any and all arguments against suppression whenever it simply asserts its agents did nothing wrong. We have never before in a criminal case permitted the government such leeway, and we decline to set aside our standard preservation requirements to allow for the government's argument here.

discovered in a search incident to his arrest. Mr. Williams argues that these drugs were the fruits of earlier unauthorized conduct by the police. Even if we were to assume that this argument is adequately preserved, Mr. Williams fails to substantiate it on appeal. He argues conclusorily that "[t]he drugs found in [his] sock after his arrest[] should have been suppressed as fruit of the poisonous tree" and fails to explain why the search could not have been conducted incident to the original basis of his arrest for possession of stolen license plates. *See Comford v. United States*, 947 A.2d 1181, 1188 (D.C. 2008) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Thus, we conclude that the trial court did not err in admitting the cocaine from Mr. Williams's sock.

For these reasons, we vacate Mr. Williams's conviction for possession of drug paraphernalia and affirm his conviction for possession of a controlled substance.

*So ordered.*

THOMPSON, *Senior Judge*, dissenting in part: In this case, appellant was

stopped by police because the vehicle he was driving had tags that had been reported stolen. After the stop, officers asked appellant to step outside the vehicle, handcuffed him, and, without reading him his *Miranda* rights, asked him whether there was anything in the vehicle they should know about. Appellant responded that he had a "stem" — a pipe used to ingest crack cocaine — on the front passenger seat. The officers eventually looked on the front passenger seat of the vehicle and found the stem with a white powdery substance on it and, in the same place, a rolled-up dollar bill also containing a white powdery substance. Appellant argues that discovery of the stem and rolled-up dollar bill — the basis of his conviction of possession of drug paraphernalia — was the fruit of his un-Mirandized statements and that the drug paraphernalia items should have been suppressed. My colleagues in the majority agree, declining to consider the government's arguments that under *United States v. Patane*,[1] the physical fruits of appellant's un-Mirandized statement need not be suppressed and that there was no Fourth Amendment violation entailed in the search that led to recovery of the stem because appellant's statement about the stem located on the passenger seat made the search for that item lawful.

---

[1] 542 U.S. 630 (2004).

My colleagues' stated reason for declining to consider the government's arguments is that the government forfeited its opportunity to defend its search based on a new theory not litigated in the trial court. I respectfully disagree, as I believe that my colleagues' crabbed view of what was required to preserve the government's claim that the search violated neither *Miranda* nor the Fourth Amendment cannot be squared with this court's jurisprudence applying *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) ("Once a . . . claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."). *See Wilson-Bey v. United States*, 903 A.2d 818, 839 & n.39 (D.C. 2006) (en banc) (explaining that even though conspiracy and accomplice liability "are distinct legal theories that require proof of different elements," the government's invocation of a conspiracy theory "for the first time in its brief to the en banc court might reasonably be viewed not as an impermissible new 'claim,' but rather as a permissible new argument in support of a previously made and preserved claim [regarding accomplice liability]" (citing *Yee*, 503 U.S. at 534)).[2]

---

[2] *See also, e.g.*, *D.C. Dep't of Health v. D.C. Off. of Emp. Appeals*, 273 A.3d 871, 876 n.4 (D.C. 2022) (reasoning that agency's argument that "any breaches of the regulatory timelines were harmless" "adequately preserved for [appellate] review" the agency's argument that the regulatory ninety-day duration limit for an employee performance improvement plan was directory rather than mandatory); *Miles v. United States*, 181 A.3d 633, 643 n.16 (D.C. 2018) (rejecting the government's contention that Miles's failure to argue at the suppression hearing that his flight was provoked, and his trial testimony that he did not flee from the officers

A review of the government's written opposition and supplemental opposition to appellant's motion to suppress shows that the government's principal arguments were that there was no *Miranda* violation because appellant was not in custody when he made his statements to the officer and that the stem and rolled-up dollar bill were in plain view and also would inevitably have been discovered after the search incident to appellant's arrest revealed cocaine in appellant's sock. But, in opposing the motion to suppress, the government also argued that "even if [appellant] was in custody [and *Miranda* was applicable]" the search that recovered the drug

---

at all, precluded him from arguing on appeal that any inference of consciousness of guilt was unwarranted because his flight was provoked; noting that Miles "clearly contended in the trial court that the police lacked reasonable suspicion to stop him"; and reasoning that his failure to argue provocation "boiled down to a failure to highlight certain facts that made his conduct less suspicious"); *Anthony v. United States*, 935 A.2d 275, 282 n.10 (D.C. 2007) ("[T]he underlying 'claim' was that the prosecutor's misstatements prejudiced Anthony and that the judge failed adequately to cure the prejudice. The contention that the judge should have asked the court reporter to read back the testimony, and that if he had done so the misrepresentations could have been remedied, is simply a (somewhat) new argument in support of that claim."); *West v. United States*, 710 A.2d 866, 868 n.3 (D.C. 1998) (holding that the defense argument that "there was no constructive refusal to admit the police officers" was sufficient to preserve for review the issue of whether the time lapse between the officers' announcement of their presence and their use of a battering ram to break down defendant's door was too short to establish compliance with the authorizing statute); *W.M. Schlosser Co. v. Md. Drywall Co.*, 673 A.2d 647, 651 n.9 (D.C. 1996) ("Robertson contends that the District failed to preserve the issue of whether the construction work being performed by him was an inherently dangerous activity. . . . The crux of the District's argument now is that implicit in its argument in the trial court that it owed no duty to Robertson — because it had delegated that duty to Schlosser — is the theory that Robertson's activity was not inherently dangerous. We agree; the District's argument below can fairly be held to encompass its argument in this court." (internal quotation marks omitted)).

paraphernalia was lawful in light of appellant's "admission . . . that he had a stem in the vehicle."[3] In other words, in the trial court, in response to the defense arguments that the fruits of the search must be excluded under *Miranda* and the Fourth Amendment, the government articulated essentially the same argument it has made in its brief in this appeal: that any *Miranda* violation did not render the search based on appellant's voluntary statement unlawful,[4] and that there was no Fourth Amendment violation entailed in the (front-passenger-seat) search that turned up the stem and dollar bill.

Moreover, the trial judge confirmed his understanding that appellant was asking the court to rule that the claimed *Miranda* violation "would lead to the suppression not only of the statements but of the fruits of the statement." That is, "the trial judge was fairly apprised as to the questions on which []he was being asked

---

[3] To be precise, the government stated in its initial opposition, "However, even if he was in custody, Defendant and the immediate area were lawfully searched, with Defendant's admission in response to an officer safety question that he had a stem in the vehicle." It repeated in its supplemental opposition, "However, even if he was in custody, notwithstanding the officer's inquiry about whether there were weapons or anything the officers should know about[,] Defendant and the immediate area were lawfully searched, with Defendant's admission in response to an officer safety question that he had a stem in the vehicle."

[4] In the trial court, appellant did not dispute the government's assertion that his statement about the stem was voluntary, and he does not contend on appeal that his statement was involuntary.

to rule," which "preserved the . . . [*Patane*] issue for our review." *Tindle v. United States*, 778 A.2d 1077, 1082 (D.C. 2001) (internal quotation marks omitted). The trial judge also understood that the government disputed the point, as the court remarked that its finding that there was no interrogation for *Miranda* purposes "does away with [the court's need to analyze] the fruit of the poisonous tree thing." Further, the prosecutor's argument apprised the court that the government was linking the vehicle search with appellant's admission about the stem. The prosecutor told the court that in light of appellant's "voluntary statement that there's a stem in there," the "stem and that dollar bill was [sic] going to be found no matter what."

To be sure, the government did not cite to the trial court the authorities it cites in its brief on appeal: *Patane*, 542 U.S. at 636 (holding that *Miranda* does not require the suppression of the fruits of a voluntary but un-Mirandized statement made during custodial questioning); and *Mitchell v. United States*, 746 A.2d 877, 890 (D.C. 2000) ("Mitchell's admission that he had marijuana in his car unquestionably established probable cause to search the vehicle and any containers found therein that might contain the contraband."). But that is of no moment, because numerous decisions of this court applying *Yee* have interpreted it to "permit us to consider on their merits . . . the more refined arguments which appellate counsel . . . have made for the first time on appeal." *Salmon v. United States*, 719 A.2d 949, 953 (D.C. 1997); see *supra*

n.2 and accompanying text; *see also Baker v. United States*, 867 A.2d 988, 1001 (D.C. 2005) ("[C]itation to a particular case is not a prerequisite to the preservation of an objection for appellate review . . . .").

Taken together, the government's written oppositions to appellant's motion to suppress tangible evidence and the prosecutor's argument during the suppression hearing can fairly be read to encompass claims that appellant's un-Mirandized admission that he had a stem did not require suppression of the fruits of the officers' follow-up search of appellant's vehicle, and that appellant's admission about having a stem on the front passenger seat of the vehicle rendered the search of that location lawful under the Fourth Amendment. The government is entitled on appeal to make additional arguments in support of those claims, including by making arguments based on *Patane* and *Mitchell*.[5] Under those authorities, there was no legal basis

---

[5] This is not a case in which the government has advanced a constitutional claim for the first time, *e.g.*, *Gilchrist v. United States*, 954 A.2d 1006, 1012-13 (D.C. 2008) ("[T]he constitutional claim presented in this court is not 'fairly included' in the question presented to the trial court regarding the question of a witness' general credibility. . . ."); or where the government's arguments rely on facts not established in the trial court, *e.g.*, *Jones v. United States*, 990 A.2d 970, 981 n.34 (D.C. 2010) ("[I]t is one thing to make new legal arguments on appeal to support a claim made below. It is another thing to advance an entirely new factual claim."); or where evaluation of the government's arguments requires consideration of different rules of evidence than were the focus of the trial court's ruling, *e.g.*, *Butts v. United States*, 822 A.2d 407, 415 n.7 (D.C. 2003) ("Because challenges to

for suppressing the stem and dollar bill.[6]  Accordingly, I would uphold appellant's

conviction for unlawful possession of drug paraphernalia.

---

relevancy and expert qualification involve entirely different rules of evidence, we view them as separate claims rather than as different arguments in support of the same claim."); or where "there is no meaningful resemblance between [the government's] position in the trial court and the claim that [it] presents to us," *Perkins v. United States*, 760 A.2d 604, 609 n.9 (D.C. 2000).  Nor is this a case in which the government did no more in the trial court than argue that "its agents did nothing wrong."  *Ante* at 6 n.5.  Rather, this is a case in which the government, having met its evidentiary burden of presenting facts showing that the search was justified based on appellant's statement about the stem, "presented the same general theme in both courts and then added additional arguments on appeal in support of the same theme."  *Perkins,* 760 A.2d at 609 n.9.

[6] *E.g., United States v. McCoy*, 407 F. App'x 514, 516 (2d Cir. 2010) ("[T]he Government's citation to *Patane* was not a new argument but rather supplied further support for a contention that the Government consistently pressed: that the firearm and ammunition should not be suppressed despite the officers' failure to give *Miranda* warnings." (citing *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 221 (2d Cir. 2006), a Second Circuit case that itself cites *Yee*, 503 U.S. at 534)).